953 P.2d 650

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Gregory Joseph NELSON,
Defendant–Appellant.**

No. 22666.

Court of Appeals of Idaho.

March 12, 1998.

Alan E. Trimming, Ada County Public Defender, August H. Cahill, Jr., Deputy Public Defender, Boise, for defendant-appellant. August H. Cahill, Jr., argued.

Alan G. Lance, Attorney General, L. LaMont Anderson, Deputy Attorney General, Boise, for plaintiff-respondent. L. LaMont Anderson argued.

LANSING, Chief Judge.

This is an appeal from a judgment of conviction for one count of kidnapping in the first degree and one count of lewd conduct with a minor child under sixteen years of age. The appellant challenges numerous pretrial and post-trial rulings of the district court and the admission of certain evidence. He also argues that there was insufficient evidence to support the jury's verdict on the kidnapping charge and challenges his sentences as excessive. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

According to the evidence presented at trial, appellant Gregory J. Nelson went to the home of K.M., a ten-year-old girl who lived in his neighborhood. Nelson knew that K.M.'s parents would not be home that morning because her father was in Alaska and her mother was at work. When Nelson arrived, he offered to pay K.M. twenty dollars if she would come and clean the travel trailer in which he lived. After an initial refusal, K.M. ultimately agreed, and Nelson drove her to his trailer. Shortly after they arrived and K.M. began cleaning, Nelson told K.M. that he was a doctor and that he wanted her to remove her shirt. When she refused, he knocked her down on the bed, held a pillow over her face until she agreed to remove her clothing, and then sexually molested her. After the incident, Nelson drove K.M. back to her house. Once there, K.M. immediately told her two brothers that Nelson had hurt her, and they took her to the house of a neighbor. The neighbor telephoned K.M.'s mother, who arrived a few minutes later as did police and paramedics. K.M. was then taken to a hospital where she was examined by a physician.

Initially, Nelson was charged by complaint with kidnapping in the first degree, Idaho Code § 18–4501, and lewd conduct with a minor, I.C. § 18–1508. However, before the scheduled preliminary hearing occurred, Nelson was indicted on the same charges by a grand jury. The complaint was then dismissed and no preliminary hearing was conducted. Nelson filed a motion to dismiss the indictment arguing, *inter alia*, that it was unconstitutional for the State to initiate grand jury proceedings after it had already initiated charges by filing a complaint. The district court refused to dismiss the indictment, and the case proceeded to a jury trial. On the last day of trial Nelson dismissed his court-appointed attorney, and at his request, he was allowed to proceed with his defense *pro se*. The jury found him guilty of both charges. Nelson immediately filed a motion for new trial, which the district court denied. The district court then sentenced Nelson to a determinate life term of imprisonment for each offense and ordered that the terms be served concurrently.

Nelson has presented multiple issues for review on appeal. He asserts that: · (1) the district court erred in failing to dismiss the indictment as unconstitutional; (2) the prosecutor did not present sufficient evidence to the grand jury to support a finding of probable cause on the kidnapping charge; (3) the prosecutor violated a duty to disclose exculpatory evidence to the grand jury; (4) the district court erred in admitting hearsay testimony about the victim's statements to the neighbor and an emergency room physician; (5) the district court erred in allowing in physical evidence for which an adequate chain of custody had not been established; (6) the district court erred in allowing the testimony of an expert witness; (7) there was insufficient evidence to support a verdict for kidnapping in the first degree; (8) the district court erred in denying Nelson's motion for a new trial; (9) his conviction and sentences violate Idaho's statutory prohibition against double punishment for the same act; and (10) the district court abused its discretion by imposing excessive sentences.

### A. Propriety of the Charge By Grand Jury Indictment and Dismissal of Complaint

In his first argument on appeal, Nelson contends that his rights under Art. I, § 8 of the Idaho Constitution were violated when the State decided to drop the complaint initially used to charge Nelson and to instead proceed against him by grand jury indictment. He rests his argument on the Section 8 provision that: "No person shall be held to

answer for any felony ... unless on presentment or indictment of a grand jury or on information of a public prosecutor, after a commitment by a magistrate." He argues that once he was charged by complaint, which would have led to a preliminary hearing and the filing of an information, the State was constitutionally bound to proceed by that method, and that the State's abandonment of that method deprived Nelson of the opportunity to confront and cross-examine the witnesses presented against him at a preliminary hearing. Therefore, Nelson asserts, the trial court should have dismissed the indictment or, alternatively, ordered that a preliminary hearing be conducted.

■ Nelson misapprehends the guarantee provided by Art. I, § 8. That constitutional provision allows the prosecutor to choose the manner in which to proceed against a criminal defendant. In *State v. Edmonson,* 113 Idaho 230, 743 P.2d 459 (1987), the Idaho Supreme Court determined that the alternative charging procedures described in Art. I, § 8 were of equal dignity, that the purpose of each is to determine probable cause, and that any advantages which a preliminary hearing might afford a defendant are purely incidental to that purpose. *Id.* at 233–34, 743 P.2d at 462–63. The Court went on to state, "The independent grand jury's function would be duplicated by requiring a subsequent preliminary hearing." *Id.*

Nelson argues that his case is distinguishable from *Edmonson* because he was initially charged by complaint and because he specifically requested a preliminary hearing. However, these same distinctions were asserted in *State v. Martinez,* 128 Idaho 104, 910 P.2d 776 (Ct.App.1995), where we found the reasoning presented in *Edmonson* to be dispositive. We stated, "[T]he Idaho Constitution does not, on its face, place any limitation on the prosecutor's choice to proceed by either alternative." *Id.* at 110, 910 P.2d at 782. Consequently, we find no error in the district court's denial of Nelson's motion to dismiss

the indictment and his motion for a preliminary hearing.

## B. Alleged Errors in the Grand Jury Proceeding

■ Nelson next raises alleged defects in the grand jury proceeding that produced his indictment. He contends that the prosecutor violated her duty under Idaho Criminal Rule 6.2(a) [1] to present allegedly exculpatory evidence to the grand jury and that the evidence presented before the grand jury was insufficient to establish probable cause to believe that he committed kidnapping. The kidnapping charge, he argues, should therefore have been stricken from the indictment.

The State responds that these challenges to the grand jury proceeding may not be reviewed on appeal because such defects must be deemed harmless once the defendant has received a full trial on the merits and has been found guilty beyond a reasonable doubt by a petit jury. The Idaho appellate courts have long followed such a rule of nonreview with respect to certain defects in preliminary hearings. In *State v. Maylett,* 108 Idaho 671, 701 P.2d 291 (Ct.App.1985), we held, "When a defendant has been convicted following a fair trial, we will not examine, on appeal, the sufficiency of the evidence presented at a preliminary examination upon which a magistrate determined there was probable cause to bind the defendant-appellant over for trial." *Id.* at 672, 701 P.2d at 292. Subsequently, the Idaho Supreme Court stated in *State v. Streeper,* 113 Idaho 662, 664–65, 747 P.2d 71, 73–74 (1987), that "where at a fair trial the accused is found guilty upon sufficient evidence to sustain the verdict, the judgment will not be overturned for defects in proof at the preliminary hearing." The Idaho Supreme Court has also held that a magistrate's error in denying the defendant's request for a continuance of his preliminary hearing does not warrant reversal of the conviction if the defendant subse-

1. Idaho Criminal Rule 6.2 states, in pertinent part:
 The prosecuting attorney shall have the power and duty to:
 (a) Present to the grand jury evidence of any public offense, however, when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence which directly negates the guilt of the subject of the investigation the prosecutor must present or otherwise disclose such evidence to the grand jury.

quently received a fair trial. *State v. Pratt,* 125 Idaho 546, 556, 873 P.2d 800, 810 (1993). *Compare State v. Wuthrich,* 112 Idaho 360, 732 P.2d 329 (Ct.App.1987) (affording appellate review of defendant's claim that he was denied his right to counsel at the preliminary hearing). Recently, in *State v. Kilby,* 130 Idaho 747, 947 P.2d 420 (Ct.App.1997), we extended this analysis to grand jury proceedings and held that alleged errors in the admission of evidence before a grand jury would not be examined on appeal if the defendant had been found guilty following a fair trial.

Our ruling in *Kilby* was consistent with decisions from numerous other jurisdictions. In *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986), the United States Supreme Court held that a procedural error in the grand jury proceedings was not fatal to a conviction. The Court ruled that the error, which was discovered during course of trial, was rendered harmless by the subsequent petit jury's verdict finding the defendant guilty beyond a reasonable doubt. *Id.* at 67–72, 106 S.Ct. at 940–43. Likewise, in *United States v. Cobleigh,* 75 F.3d 242, 251 (6th Cir.1996), the appellate court declined to consider an allegation that the prosecutor presented perjured testimony to the grand jury. The court stated that "any error by the prosecution before the grand jury is harmless because [the defendant] was subsequently convicted by the petit jury." Other cases holding that a guilty verdict by a petit jury after a full trial on the merits rendered harmless an alleged defect during the grand jury proceedings include; *United States v. Lopez–Gutierrez,* 83 F.3d 1235, 1244–45 (10th Cir.1996); *United States v. Flores–Rivera,* 56 F.3d 319, 328 (1st Cir. 1995); *State v. Atwood,* 171 Ariz. 576, 832 P.2d 593, 618 (1992); *Isaacs v. State,* 259 Ga. 717, 386 S.E.2d 316, 321 (1989); *State v. Tempest,* 660 A.2d 278, 280 (R.I.1995). *But see State v. Wright,* 207 Conn. 276, 542 A.2d 299 (1988) (holding that a conviction entered against a defendant indicted by a racially discriminatory grand jury must be reversed and the indictment quashed).

We are persuaded that errors in a grand jury proceeding of the type alleged by Nelson, like similar defects in a preliminary hearing, should not be a basis to set aside a conviction after a petit jury has found the defendant guilty following a fair trial. In the sections of this opinion that follow, we reject Nelson's claims that his jury trial was tainted with error. Therefore, because Nelson was found guilty beyond a reasonable doubt by a jury at the conclusion of a fair trial, we will not examine the sufficiency of the evidence presented to the grand jury nor Nelson's claim that the prosecutor violated I.C.R. 6.2(a).[2]

## C. Evidentiary Issues

### 1. Hearsay testimony

██ Nelson challenges several evidentiary rulings made during the trial. First, he argues that the district court erred in allowing Dr. Marilee Kuracina to testify at trial regarding statements made to her by K.M. during the course of an emergency room medical examination. Dr. Kuracina was permitted to recount K.M.'s description of the events leading up to the sexual assault and the particulars of the molestation itself. Nelson argues that Dr. Kuracina's testimony should have been excluded as hearsay. The determination whether to admit evidence under one of the recognized hearsay exceptions is generally a matter that is left to the broad discretion of the trial court. *Department of Health and Welfare v. Altman,* 122 Idaho 1004, 1007, 842 P.2d 683, 686 (1992); *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 900, 665 P.2d 661, 664 (1983). We will not overturn a trial court's exercise of that discretion absent a clear showing of abuse. *Altman, supra; Cheney, supra.*

██ The trial court admitted Dr. Kuracina's testimony under Idaho Rule of Evidence 803(4), which allows use of hearsay statements made "for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the source thereof insofar as reasonably pertinent to diagnosis or treat-

---

**2.** We observe, however, that I.C.R. 6.2 was not in effect on February 10, 1994, when Nelson was indicted. The rule was adopted effective July 1, 1994.

ment." The rule is premised on the assumption that such statements are generally trustworthy because the declarant is motivated by a desire to receive proper medical treatment and will therefore be truthful in giving pertinent information to the physician. *State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908 (Ct.App.1996). *See also* Report of Idaho State Bar Evidence Committee § C 803, p. 6 (1985); *White v. Illinois*, 502 U.S. 346, 356, 112 S.Ct. 736, 742, 116 L.Ed.2d 848 (1992); CHRISTOPHER B. MUELLER & LAIRD C. KIRK-PATRICK, Evidence § 8.41 (1995).

■ Nelson claims that K.M.'s statements do not fit within this exception because her medical examination was not made for purposes of medical diagnosis or treatment, but rather for purposes of discovering evidence to corroborate her allegations of sexual abuse. Nelson's argument is entirely without substantiation in the record. Nelson has not identified, and we have not discovered, anything in the record suggesting that Dr. Kuracina's examination was for purposes other than medical diagnosis and treatment. K.M. was taken to the emergency room within an hour of the sexual assault. Prior to her examination, K.M. told adults that Nelson had hurt her, and she was complaining about pain in her rectal and vaginal area. In these circumstances, we agree with the district judge, who said:

> I do not view it as taking her to the ER room in order to gain evidence against the defendant. But when you have a ten-year-old who complains that she had penetration in her rectum, good medical procedure would require that you take her to the ER room to examine that. I think that was clearly borne out by a recent case that happened in Meridian.[3]

On this record there is no basis to infer that the declarant, K.M., believed she was seeing the doctor for any reason other than diagnosis and treatment. Therefore, the district court properly held that K.M.'s statements to Dr. Kuracina were admissible.

Nelson also made an unsuccessful hearsay objection to testimony regarding K.M.'s statements describing the molestation to her neighbor and her grandmother. The stated ground for Nelson's objections to this testimony at trial was that it was inadmissible hearsay. The district court overruled the objection after concluding that K.M.'s statements were admissible under the excited utterance exception, I.R.E. 803(2). On appeal, Nelson has not challenged the district court's characterization of the statements as excited utterances. Instead, he contends that the testimony should have been excluded as cumulative because K.M. was available to testify and did testify to the same facts. We do not address this contention, however, because it was not the basis of an objection in the trial court and is raised for the first time on appeal. *See Viveros v. State Dep't of Health and Welfare*, 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995); *State v. Doe*, 123 Idaho 370, 371, 848 P.2d 428, 429 (1993). *See also Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

**2. The Rape Kit**

■ During her examination of K.M., Dr. Kuracina prepared a "rape kit" composed of swabs and clippings to preserve evidence from K.M.'s body. Nelson contends that the district court abused its discretion by admitting the rape kit into evidence. He argues that the necessary foundation for this evidence was lacking because two Boise police officers gave inconsistent testimony regarding the chain of custody after the police took possession of the kit. Officer Stevens testified that he received the kit from a nurse at the hospital, that he placed the kit in the locked trunk of his patrol car, and that he transported it to the police station where he gave it to detective Flaten to store in the evidence room. However, detective Flaten testified that he did not receive the kit from officer Stevens, but believed that officer Stevens placed the kit into the evidence room himself. Based on these inconsistent statements, Nelson argues that there was a break in the chain of custody which warranted the kit's exclusion at trial.

---

**3.** The "recent case" referred to by the district court is *State v. Walker*, 129 Idaho 409, 925 P.2d 413 (Ct.App.1996), where a two-and-one-half-year-old child who had been rectally sodomized died of peritonitis as a result of the abuse.

 A trial court's determination whether evidence is supported by a proper foundation is reviewable under an abuse of discretion standard. *State v. Griffith,* 94 Idaho 76, 81–82, 481 P.2d 34, 39–40 (1971); *State v. Wilson,* 120 Idaho 643, 646, 818 P.2d 347, 350 (Ct.App.1991). As a general rule in criminal proceedings, an exhibit must be shown to be in substantially the same condition when offered into evidence as it was when the crime was committed. *State v. Crook,* 98 Idaho 383, 384, 565 P.2d 576, 577 (1977); *Wilson, supra.* Ordinarily the party offering an exhibit presents evidence of its chain of custody in order to show that the exhibit was not materially altered. *Wilson, supra.* However, the party offering the exhibit need not exclude all possibility of tampering. Essentially, the court must determine whether, "in all reasonable probability, the proffered exhibit has not been changed in any material respect." *Griffith, supra; Wilson, supra.*

The foundational evidence regarding the rape kit was sufficient for this purpose. The kit was sealed with tape before it was delivered to a police officer. Nurse Drake positively identified the rape kit presented at trial as the one which she and Dr. Kuracina prepared at the time of K.M.'s emergency room examination. She based the identification of the kit on her recognition of her own signature written across the top of the kit and her recognition of the emergency room tape used to seal it. The inconsistent testimony of the police officers presented at trial does not demonstrate a fatal break in the chain of custody; it demonstrates that one or both of the officers forgot the precise details regarding how the kit was checked into the evidence room. Regardless of which officer's recollection is accepted, the testimony shows that the kit was secured in the evidence room shortly after it was transported from the hospital. Nelson has pointed to no evidence suggesting that the kit may have been opened or altered in any way. On the evidence presented, the district court could properly conclude that, as a matter of reasonable probability, the rape kit had not been materially altered. Therefore, there was no abuse of discretion in the admission of this evidence.

### 3. Testimony Of Nurse Henbest

 Nelson has also attacked the district court's decision to allow the expert testimony of Margaret Henbest, a pediatric nurse practitioner employed at the Children at Risk Evaluation Service Center ("CARES"). Henbest testified about her physical examination of K.M. and expressed her opinion that K.M. had sustained blunt-force trauma to the opening of the anus. Nelson does not contest Henbest's qualifications to conduct physical examinations of children for evidence of sexual abuse or to testify in regard thereto. Instead, he contends that Henbest's opinion about the cause of K.M.'s injuries lacked proper foundation. Specifically, Nelson asserts that there was no evidence to support Henbest's opinion as to the actual cause of K.M.'s injuries except the child's own statements and that Henbest's testimony therefore merely vouched for the credibility of the child. This argument is devoid of merit. Henbest did not testify to any statements made by K.M. Rather, as the basis for her opinion that blunt force trauma had occurred, Henbest described specific physical evidence, including swelling, redness and abrasions in the rectal area, that she found during an extensive physical examination of K.M. This testimony provided an adequate foundation for Henbest's opinion that blunt-force trauma had been inflicted.

### D. Motion for a New Trial

Next, we consider Nelson's contention that the district court incorrectly denied his motion for a new trial. Nelson asserts that a new trial should have been granted because (1) the prosecutor allegedly failed to disclose evidence prior to trial; (2) the prosecutor allegedly made improper comments during her closing argument; (3) the district court erroneously denied his request for a continuance; and (4) the district court failed to properly investigate a juror's discovery of a note containing the words "not guilty."

 The only permissible grounds for a motion for a new trial in a criminal action are those enumerated in Idaho Code Section

19–2406 [4]. *State v. Jones*, 127 Idaho 478, 903 P.2d 67 (1995); *State v. Davis*, 127 Idaho 62, 896 P.2d 970 (1995); *State v. Gomez*, 126 Idaho 83, 878 P.2d 782 (1994). The State argues that none of the grounds for a new trial urged by Nelson fall within the parameters of this statute. As to the first two bases for Nelson's motion, the State's position is correct. The first two arguments are premised on alleged misconduct of the prosecuting attorney, but prosecutorial misconduct is not among the enumerated grounds for a new trial authorized by I.C. § 19–2406. *Jones*, 127 Idaho at 481, 903 P.2d at 70. Therefore the district court did not err in rejecting these arguments as bases for a new trial. As to Nelson's third and fourth proffered grounds for a new trial, however, we conclude that they can properly be characterized as falling within the statutorily recognized bases for a new trial under I.C. § 19–2406(2) or (5) and we will therefore address their merits.

Nelson's complaint regarding the denial of his motion for continuance relates to a motion he made on the last day of his four-day trial. Nelson on that day made an oral motion to discharge his attorney and to represent himself. After extensive questioning to ensure that Nelson understood the ramifications of his decision, the court allowed him to go forward *pro se*, with his court-appointed counsel remaining in the courtroom on standby. Nelson then asked for a continuance in order to serve additional subpoenas. Nelson explained that he wanted to recall a number of witnesses who had already testi-

fied. The trial court found that Nelson had not demonstrated any diligence in attempting to secure the testimony of those witnesses and had not demonstrated any reason why he could not have presented their testimony through cross-examination. Nonetheless, the court allowed a short recess and directed Nelson's former counsel to assist him in obtaining the witnesses. During Nelson's case in chief he then recalled several of the State's witnesses, introduced several exhibits, and testified on his own behalf.

The decision to grant or deny a motion for a continuance is vested in the sound discretion of the trial court and will not be disturbed on appeal unless there has been a clear abuse of discretion. *State v. Richardson*, 95 Idaho 446, 511 P.2d 263 (1973); *State v. Saunders*, 124 Idaho 334, 336–37, 859 P.2d 370, 372–73 (Ct.App.1993). "Generally it is held that unless an appellant shows that his substantial rights have been prejudiced by reason of a denial of his motion for continuance, appellate courts can only conclude that there was no abuse of discretion." *State v. Laws*, 94 Idaho 200, 202, 485 P.2d 144, 146 (1971).

We find no abuse of the court's discretion here. First, the timing of Nelson's motion could hardly have been worse, coming after three days of trial. Second, his stated reason for needing a continuance, to subpoena witnesses, was not convincing. Nelson identified fourteen persons as witnesses he wished to subpoena. Of those fourteen, all but one had already been subpoenaed by the

---

4. Grounds for new trial.—When a verdict has been rendered against the defendant the court may, upon his application, grant a new trial in the following cases only:

1. When the trial has been had in his absence, if the indictment is for a felony.
2. When the jury has received any evidence out of court other than that resulting from a view of the premises.
3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented.
4. When the verdict has been decided by lot or by any means other than a fair expression of opinion on the part of all the jurors.
5. When the court has misdirected the jury in a matter of law, or has erred in the decision of any

question of law arising during the course of the trial.
6. When the verdict is contrary to law or evidence.
7. When new evidence is discovered material to the defendant, and which he could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing in support thereof the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits the court may postpone the hearing of the motion for such length of time as, under all the circumstances of the case, may seem reasonable.

State, had testified in the State's case in chief, and had been subject to cross-examination by Nelson's counsel. Later, in presenting his defense, Nelson did in fact call four of these witnesses. On his motion for a new trial, Nelson did not identify any witness that he was unable to present due to the denial of his request for a continuance or any way in which his defense was hampered. The record does not demonstrate that any of Nelson's substantial rights have been prejudiced. Therefore, the denial of his motion for a new trial on this basis will not be disturbed.

■ Next, Nelson claims that he is entitled to a new trial because of the district court's failure to investigate the circumstances surrounding a hand-written note found under one of the juror's seats during the trial. The note, which was written on a small scrap of torn paper, said, "Not guilty." It was discovered by a juror who turned it over to the court bailiff for delivery to the judge. The district court did not inform either party of the existence of the note until after the conclusion of the trial. Nelson contends that the note constitutes impermissible outside information and that it was left in the jury box by someone attempting to influence the jury's deliberations. He argues that the district court should have immediately notified both parties about the note and should have questioned the jurors to determine what, if any, impact the note may have had on their decision-making process.

We find no error. Nelson's claim of jury tampering is pure speculation. The words on the paper were not expressly related to the case at hand, and the juror who found it followed the correct course by giving it to the bailiff. There is no basis to infer that this juror or any other was influenced to the slightest degree by the scrap of paper. The district court did not abuse its discretion in denying Nelson's motion for new trial on this basis.

### E. Sufficiency of the Evidence

■ Nelson next argues that the trial evidence was insufficient to support the verdict finding him guilty of kidnapping in the first degree. He contends that there was no evidence from which a jury could reasonably conclude that he unlawfully confined K.M. as charged in the indictment.

■ A conviction will not be set aside where there is substantial, competent evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Peite*, 122 Idaho 809, 823, 839 P.2d 1223, 1237 (Ct.App. 1992). On appeal, we view all facts, and the inferences to be drawn from those facts, in the light most favorable to the jury's verdict. *Peite, supra; State v. Aragon*, 107 Idaho 358, 366, 690 P.2d 293, 301 (1984). Although there may be conflicting evidence, where there is competent evidence to sustain the verdict, it will not be set aside. *Peite, supra; State v. Cotton*, 100 Idaho 573, 575, 602 P.2d 71, 73 (1979).

In this case, the kidnapping count of the indictment alleged that Nelson "did wilfully confine" K.M. with the intent of detaining her for the purpose of committing lewd acts. He was thus charged with violation of I.C. § 18–4501(1) which provides that any person is guilty of kidnapping who: "[W]ilfully seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, ... or in any way held to service or kept or detained against his will," as well as I.C. § 18–4502, which provides that kidnapping committed with the purpose of committing a lewd and lascivious act upon a child under the age of sixteen is kidnapping in the first degree. Nelson asserts that the elements of the offense were not proved because there was no evidence showing that he confined K.M. against her will. We disagree.

K.M. testified that shortly after Nelson brought her to his trailer he asked her to remove her clothing. When she refused to take off her clothes, he knocked her down onto his bed and began smothering her with a pillow. K.M. said that Nelson continued to hold and smother her in this manner until she agreed to remove her clothing. This testimony constitutes substantial, competent evidence from which the jury could reason-

ably find that Nelson confined K.M. in his trailer against her will.

## F. I.C. § 18–301

▇▇▇ Nelson also asserts that by imposing sentences upon him for both kidnapping and lewd conduct, the district court violated the dictates of former I.C. § 18–301. That statute, which was in effect at the time of Nelson's indictment but not at the time of his conviction,[5] stated:

> An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

*Id.* Nelson maintains that the acts which led to his conviction for lewd conduct and for kidnapping were all part of a single course of conduct and therefore, under the statute, he cannot be subjected to more than one punishment. Assuming, *arguendo*, that the statute is applicable in this case notwithstanding its repeal prior to Nelson's conviction, we conclude that it does not bar the imposition of two sentences on the facts presented here.

▇▇▇ Application of the double punishment bar of I.C. § 18–301, "depends upon whether a *separate* and *distinct* act can be established as the basis for each prosecution, regardless of whether the offenses require proof of differing elements." *State v. Smith,* 121 Idaho 20, 822 P.2d 539 (Ct.App.1991). *See also State v. Werneth,* 101 Idaho 241, 611 P.2d 1026 (1980); *State v. Castaneda,* 125 Idaho 234, 235, 869 P.2d 234, 235 (Ct.App. 1994). The word "act" as used in that statute, "refers to that term in its ordinary sense, but also includes a course of conduct of such a nature as to amount to a single act, that is, a course of conduct which does not consist of divisible transactions." *Smith, supra.* As one method of determining whether the defendant's conduct is divisible into separate distinct acts, the Idaho courts have employed a temporal test. *State v. Sterley,* 112

Idaho 1097, 739 P.2d 396 (1987); *State v. Chapman,* 112 Idaho 1011, 739 P.2d 310 (1987); *Smith, supra.* A related series of events may be segregated into distinct acts if the acts are sufficiently separate in character and clear enough in sequence to be temporally distinguishable. *Castaneda,* 125 Idaho at 236, 869 P.2d at 236.

Applying this test in the present case, we find that the acts composing the offenses of kidnapping and lewd conduct are separable. The kidnapping conviction could properly be predicated upon Nelson's acts of holding K.M. down on his bed and smothering her with a pillow. Based upon those actions, the jury could reasonably find that Nelson confined K.M. against her will. Those acts occurred before the acts constituting lewd conduct had begun. Therefore, the two offenses were not committed simultaneously. In summary, Nelson's punishment for kidnapping and his punishment for lewd conduct with a child under the age of sixteen years are not punishment for the same act and therefore are not violative of former I.C. § 18–301.

## G. Sentence

▇▇▇ Finally, Nelson asserts that the district court abused its discretion when it sentenced him to serve a fixed life term of imprisonment for each of his offenses.

▇▇▇ Where a sentence is within the statutory limits, it will not be reversed on appeal absent an abuse of the sentencing court's discretion. *State v. Hedger,* 115 Idaho 598, 768 P.2d 1331 (1989); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). In this case, the life sentences Nelson received following his conviction for lewd conduct with a minor and first degree kidnapping were each within the statutory limits. I.C. § 18–1508; 18–4504. Consequently, we need only determine if a clear abuse of discretion on the part of the sentencing court has been affirmatively shown by Nelson. *State v. Shiloff,* 125 Idaho 104, 106, 867 P.2d 978, 980 (1994); *Toohill,* 103 Idaho at 568, 650 P.2d at 710. This question

---

5. I.C. § 18–301 was repealed by the legislature effective February 13, 1995. 1995 Idaho Sess. Laws ch. 16.

turns upon whether the sentence is reasonable under the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991) *overruled on other grounds, State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992). *See also State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993). "[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *Toohill*, 103 Idaho at 568, 650 P.2d at 710. *See also Charboneau, supra; State v. Hernandez*, 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991). However, a sentence need not serve all four sentencing goals, *State v. Salter*, 125 Idaho 418, 420, 871 P.2d 835, 837 (Ct.App.1994), "The goals of retribution, deterrence and the protection of society, alone, are sufficient to justify [a] sentence." *State v. Waddell*, 119 Idaho 238, 241, 804 P.2d 1369, 1372 (Ct.App.1991). The question presented is not whether the sentences are ones that this Court would have chosen. Rather, if reasonable minds might differ as to the appropriateness of the sentence, the discretion vested in the district court will be respected. *Toohill*, 103 Idaho at 568, 650 P.2d at 710. In evaluating the reasonableness of a sentence, we focus upon both the nature of the offense and the character of the offender. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

Nelson maintains that his sentences are excessive and were imposed by the sentencing judge to punish him for exercising his constitutional rights during the trial. In particular, Nelson argues that his mid-trial decision to represent himself, and to personally examine K.M. on the witness stand, provoked the anger of the district judge. However, we find nothing in the record to support Nelson's claim that the sentences were the product of retaliation. In fact, the record indicates that the district court gave Nelson relatively wide latitude in his endeavor to represent himself at trial.

Nor can we say that the sentences are unreasonable in view of Nelson's character and the gravity of his crimes. The manner in which the instant crimes were committed demonstrate that Nelson's molestation of K.M. was not a matter of impulse or mere opportunity, but a planned, predatory act. Nelson went to K.M.'s home fully aware that her parents were gone and lured her to his trailer with a promise to pay her twenty dollars for cleaning. Significantly, he expressly refused to allow K.M.'s younger brother to accompany her. Nelson's crime was also brutal and violent. When K.M. refused his demand that she remove her clothing, he forced her onto his bed and smothered her with a pillow until she complied. He then sodomized her. Before returning K.M. to her home, he threatened to kill her if she told anyone of his offense. Although Nelson had no previous convictions for sex offenses, he had been convicted of three prior felonies and he was on parole when he molested K.M.[6] Even after being found guilty by the jury, he demonstrated no remorse, took no responsibility for his crimes, and maintained that K.M. had fabricated the entire incident. At the sentencing hearing Nelson presented no evidence that he was amenable to treatment or rehabilitation.

In view of these circumstances, we conclude that reasonable minds could differ as to whether Nelson's permanent imprisonment is necessary to achieve the goals of sentencing, particularly deterrence, retribution, and the protection of society. Accordingly, we hold that the district court did not abuse its discretion in imposing determinate life sentences.

## CONCLUSION

Nelson's claims of error in the admission of evidence at trial and the denial of pretrial and post-trial motions are without merit, and the evidence presented at trial was sufficient to support the jury's verdict. We further conclude that Nelson's conviction and sentencing for two crimes did not violate I.C.

**6.** Based upon these prior convictions, the State filed a sentence enhancement charge alleging that Nelson should be sentenced as a persistent violator under I.C. § 19–2514. The State later dropped this allegation, however.

§ 18–301 and that his sentences do not constitute an abuse of the trial court's discretion. Accordingly, the judgment of conviction and sentences are affirmed.

PERRY, J., and WALTERS, Acting J., concur.