IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 40661/40828

| GREGORY JOSEPH NELSON, | ) | 2014 Opinion No. 83 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: October 8, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Lynn G. Norton, District Judge.

Judgments summarily dismissing successive petitions for post-conviction relief, affirmed.

Nevin, Benjamin, McKay & Bartlett, LLP; Dennis A. Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Gregory Joseph Nelson appeals from the district court's judgments summarily dismissing his fourth and fifth successive petitions for post-conviction relief.  For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In affirming Nelson's convictions and sentences on direct appeal, we summarized the underlying facts of Nelson's crimes:

> According to the evidence presented at trial, appellant Gregory J. Nelson went to the home of K.M., a ten-year-old girl who lived in his neighborhood. Nelson knew that K.M.'s parents would not be home that morning because her father was in Alaska and her mother was at work.  When Nelson arrived, he offered to pay K.M. twenty dollars if she would come and clean the travel trailer in which he lived.  After an initial refusal, K.M. ultimately agreed, and Nelson drove her to his trailer.  Shortly after they arrived and K.M. began cleaning,

1

Nelson told K.M. that he was a doctor and that he wanted her to remove her shirt. When she refused, he knocked her down on the bed, held a pillow over her face until she agreed to remove her clothing, and then sexually molested her. After the incident, Nelson drove K.M. back to her house. Once there, K.M. immediately told her two brothers that Nelson had hurt her, and they took her to the house of a neighbor. The neighbor telephoned K.M.'s mother, who arrived a few minutes later as did police and paramedics. K.M. was then taken to a hospital where she was examined by a physician.

*State v. Nelson*, 131 Idaho 210, 213, 953 P.2d 650, 653 (Ct. App. 1998).

A jury found Nelson guilty of first degree kidnapping, Idaho Code § 18-4501, and lewd conduct with a minor, I.C. § 18-1508. Nelson raised ten issues on direct appeal, including a claim that the district court erred by admitting physical evidence for which the State failed to establish an adequate chain of custody. This Court affirmed Nelson's convictions and sentences. *Nelson*, 131 Idaho at 221-22, 953 P.2d at 661-62.

Over the next several years, Nelson filed a petition for post-conviction relief and three successive petitions, all of which were denied. He appealed the denial of the first two and this Court affirmed both times. In 2011, he filed his fourth successive petition for post-conviction relief, requesting DNA testing of materials in the rape kit and K.M.'s underwear (Docket No. 40661). The district court appointed counsel and pursuant to a stipulation between the parties, the district court ordered DNA testing be performed. A specific type of DNA test, Y-STR, was performed and indicated that Nelson and his paternal relatives could not be excluded as the source of the male DNA profile obtained from the relevant evidence.

After the results were received, the State moved for dismissal of Nelson's post-conviction petition. Nelson filed pro se motions seeking to replace his appointed counsel, as well as a pro se supplemental motion for post-conviction relief, supporting affidavits, and other documents, in which he appeared to contend that the Y-STR DNA test was insufficient because such testing cannot be linked to a specific individual, but is instead useful only in excluding individuals as DNA contributors. Nelson requested that a different type of DNA test, STR, be conducted. Unlike Y-STR testing, he asserted, STR testing would identify the specific contributor of the DNA samples and could be compared against the national DNA database. The district court denied Nelson's motion for substitute counsel and requested that Nelson's appointed counsel respond to the State's motion for summary dismissal. The district court also barred Nelson from continuing to file documents pro se. Nelson's counsel filed an objection to the State's motion for

summary dismissal and requested that the court consider Nelson's pro se filings in which he requested additional testing. The district court did so, but denied Nelson's request for additional DNA testing and granted the State's motion for summary dismissal of Nelson's fourth successive post-conviction petition.

While Docket No. 40661 was pending, Nelson asserted that evidence uncovered in that case showed the existence of inconsistent labeling and descriptions of various items in the rape kit, which he alleged indicated evidence tampering. The district court stayed consideration of the claim pending the outcome of Docket No. 40661. Nelson formally asserted the evidence tampering claim in a fifth, successive post-conviction petition (Docket No. 40828). He moved for appointment of counsel and submitted additional argument. The district court denied the motion for appointment of counsel and summarily dismissed the petition.

Nelson timely appealed from the district court's summary dismissal of his petitions in both Docket No. 40661 and Docket No. 40828. The Idaho Supreme Court granted Nelson's motion to consolidate the appeals.

## II.

## ANALYSIS

### A.    Docket No. 40661

Nelson contends the district court abused its discretion by failing to order additional DNA testing, STR, when the type of DNA test ordered, Y-STR, "did not identify [him] as the source of the male DNA but also did not exclude him." When there is a motion for summary dismissal of an application for post-conviction relief, the court must review the facts in a light most favorable to the petitioner. *Fields v. State*, 151 Idaho 18, 24, 253 P.3d 692, 698 (2011); *Pizzuto v. State*, 149 Idaho 155, 160, 233 P.3d 86, 91 (2010). However, to prevent summary dismissal, the petitioner must present evidence establishing a prima facie case as to each element of the claims upon which the petitioner bears the burden of proof. *Fields*, 151 Idaho at 24, 253 P.3d at 698; *Pizzuto v. State*, 146 Idaho 720, 728, 202 P.3d 642, 650 (2008). A mere scintilla of evidence is not sufficient to create a genuine issue of material fact precluding summary dismissal. *Fields*, 151 Idaho at 24, 253 P.3d at 698; *Pizzuto*, 146 Idaho at 733, 202 P.3d at 655. The application must be supported by written statements from competent witnesses or other verifiable information. *Fields*, 151 Idaho at 24, 253 P.3d at 698. Unsubstantiated and

3

conclusory allegations are insufficient to entitle a petitioner to an evidentiary hearing. *Id.*; *Pizzuto*, 149 Idaho at 160, 233 P.3d at 91.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg v. State*, 131 Idaho 517, 519, 960 P.2d 738, 740 (1998). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009).

Idaho Code § 19-4902(b) provides:

> A petitioner may, at any time, file a petition before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic deoxyribonucleic acid (DNA) testing on evidence that was secured in relation to the trial which resulted in his or her conviction but which was not subject to the testing that is now requested because the technology for the testing was not available at the time of trial.

The statute requires that the petitioner present a prima facie case that identity was at issue in the trial and that the evidence was subject to "a chain of custody sufficient to establish that such evidence has not been substituted, tampered with, replaced or altered in any material aspect." I.C. § 19-4902(c). The district court "shall allow" the testing

> under reasonable conditions designed to protect the state's interests in the integrity of the evidence and the testing process upon a determination that:
> (1) The result of the testing has the scientific potential to produce new, noncumulative evidence that would show that it is more probable than not that the petitioner is innocent; and
> (2) The testing method requested would likely produce admissible results under the Idaho rules of evidence.

I.C. § 19-4902(e). If "the fingerprint or forensic DNA test results demonstrate, in light of all admissible evidence, that the petitioner is not the person who committed the offense, the court shall order the appropriate relief." I.C. § 19-4902(f). Under the plain wording of the statute, the petitioner will not be entitled to relief from his or her judgment of conviction unless forensic DNA test results demonstrate that the petitioner is not the person who committed the offense. *Fields*, 151 Idaho at 22, 253 P.3d at 696. The petitioner has the burden of establishing that claim by a preponderance of the evidence. *Id.*; *McCoy v. State*, 129 Idaho 70, 72-73, 921 P.2d 1194, 1196-97 (1996).

4

Here, the parties stipulated that the rape kit and underwear be transported to the Idaho State Forensic Lab where lab personnel would inventory the contents. The stipulation further indicated the inventory would be provided to the State and to Nelson's counsel and "[a]t that time the State and Defense contemplate entering into an additional stipulation regarding possible DNA testing of the Rape Kit and Bag w/ Underwear." Attached to the stipulation and the subsequent order was the exhibit list from the 1995 trial. The parties also stipulated that Nelson was indigent and without the ability to pay for testing and so "the cost of testing shall be paid from funds allocated for Idaho State Police forensic testing." The district court entered an order to this effect.

No subsequent stipulation in regard to the actual DNA testing of the evidence appears in the record. However, a hearing was held in February 2012 regarding who would pay for the test, during which the parties appeared to proceed with the understanding that DNA testing of the rape kit and underwear would occur. Discussion of the type of test to be conducted also arose at the hearing. The DNA supervisor and technical lead for the Idaho State Police Forensic Services Lab, Cynthia Cunningham, told the court that her lab only performs STR DNA testing, which is "DNA testing that looks at DNA that everyone has, males, females" in order "to determine whether or not a specific individual could be the source of a given body fluid associated with the case." Every person, she noted, has unique STR type except identical twins. She then related that "[t]he testing *being requested in this case* is referred to as Y-STR testing" which is "testing specific for males." (Emphasis added.) She further explained that because this DNA is "passed from father to son . . . everyone within a male line has the same YSTR type." Cunningham indicated that the national DNA index system that Idaho participates in (CDIS) only contains STR profiles. Nelson's counsel made no objection to the statement and subsequent discussions that Y-STR testing was requested and would be performed. The same day of the hearing, the district court issued an order stating, in relevant part: "Idaho State Police investigations shall have the DNA testing (YSTR) required by Idaho Code 19-4902." Again, Nelson did not object to Y-STR testing being ordered.

After the results of the Y-STR testing were received, indicating Nelson and his paternal line could not be excluded as contributors of the DNA, Nelson filed a pro se notice indicating he had discharged his appointed counsel. His reasons included that he had informed counsel he wanted a "full CODIS STR" DNA analysis performed, he had not been consulted regarding the

type of DNA analysis to be performed, it was likely that Y-STR testing would be inconclusive given "the small amount of DNA found, the imprecise nature of the test and because the trailer where the offense was alleged to have occurred belonged to Mr. Nelson's father prior to his death" and therefore DNA from his father could have been "present in normal household dust which could be the source of the cells tested." He also contended that had he been consulted prior to the test being performed, he would have "demanded that the lab" utilize certain tools to "amplify the minute quantities of Y-DNA provided from the vaginal and anal swabs." In response to the State's motion for summary dismissal, Nelson filed several documents pro se, reiterating his opposition to the use of Y-STR testing and indicating that, all along, his request for DNA testing had been for STR testing because he knew of no other type.

After the court ordered Nelson to either proceed pro se or stop filing pro se documents, Nelson indicated he would proceed with appointed counsel (whom he had previously attempted to discharge). At a hearing on the State's motion for summary dismissal, Nelson's counsel advanced Nelson's contention that "had the proper testing been done, it would have shown that it's more probable than not that he's innocent . . . as opposed to [just showing] he cannot be excluded among the hundreds of thousands of other males who could not be excluded." Counsel requested that STR DNA testing be performed or that an evidentiary hearing be held to present the "science" behind Nelson's contention that the Y-STR testing was not helpful. In granting the State's motion for summary judgment, the district court determined that given the results of the Y-STR testing, Nelson did not meet his "burden of showing that it is more probable than not under the evidence that has been presented that he is innocent, and to that extent, I do not find that additional testing is required in this case." In its subsequent written decision, the district court further explained its decision not to allow additional testing:

> The Court has considered Mr. Nelson's First Affidavit requesting CODIS STR DNA testing. The Petitioner also filed his Second Affidavit explaining why he feels that Y-STR was an inadequate test, explaining why he feels a "STR DNA identification analysis" should have been conducted, and his legal conclusions about the type of DNA testing contemplated or required by the Idaho legislature and the DNA testing statutes. . . . [T]his affidavit contains inadmissible hearsay, information outside the Petitioner's personal knowledge, and the Petitioner's legal conclusion and, therefore, are not considered further. To the extent that Mr. Nelson has read articles on DNA testing, even specifically cited *National Geographic* articles, he would still not qualify as an expert capable of rendering an admissible opinion under the Idaho Rules of Evidence. Therefore, hearsay statements and the Petitioner's factual and legal conclusions related to CODIS

6

STR DNA testing in the First and Second Affidavits do not present a genuine issue of material fact that the Petitioner was not the one who committed these offenses.

The Court has considered the admissible evidence presented by the Petitioner in the light most favorable to the Petitioner, but still finds the results in [the Y-STR DNA report] are valid, the correct testing method was used, and . . . Mr. Nelson is not excluded as the one who committed the crimes for which he was convicted. The Court has also considered all of the admissible evidence presented by the Petitioner, and finds no need for continued testing of these items because he has not shown the result would be substantially different from or not cumulative to other items in the "rape kit."

(Footnotes omitted.)

On appeal, Nelson contends he is entitled to further testing pursuant to section 19-4902(e), the requirements of which, he argues, the district court did not properly consider. Specifically, he contends he is entitled to an additional test because STR testing has the scientific potential to produce new, noncumulative evidence showing it is more probable than not that he is innocent and testing is likely to produce admissible results.

We can envision an instance where a petitioner under I.C. § 19-4902(e) may be entitled to additional testing--if, for example, a showing is made that entirely inappropriate or inadequate tests were performed (and/or that they were performed incorrectly). Otherwise, the right to testing under section 19-4902 could essentially be dissipated by the inadvertent or malevolent actions of one or more actors in the process. However, this is not such an instance. As the district court articulated, Nelson's personal opinions as to the appropriateness of different types of DNA testing are not admissible. *See Fields*, 151 Idaho at 24, 253 P.3d at 698 (holding that in order to survive summary dismissal, an application must be supported by written statements from competent witnesses or other verifiable information). Even if his assertions were considered, they are not sufficient to show that the performance of STR testing was preferable, and more likely to yield a conclusive result, under the circumstances of this case.[1] The assessment of

---

[1] We note that Nelson's assertions that STR testing was the appropriate test in this instance are far from supported by authority (legal or scientific). In fact, as the State notes, courts have pointed out that both tests have their strengths and weaknesses. One New Jersey court has explained:

Because . . . STR DNA testing provides a high probability of identifying an individual as the DNA source, it is the preferred method of analysis.

Nelson's own expert, a forensic scientist (which he submitted as an exhibit in support of his objection to the State's motion for summary dismissal), neither criticized the use of Y-STR testing nor suggested the performance of additional STR testing. Accordingly, given that the initial DNA testing did not demonstrate Nelson's innocence, and Nelson did not show that additional testing was necessary because the type of testing performed was inappropriate, inadequate, and/or incorrectly performed, the district court did not err by granting the State's motion for summary dismissal of this claim.

## B.    Docket No. 40828

Nelson contends the district court abused its discretion by denying his motion for appointment of counsel for his fifth successive post-conviction petition, in which Nelson asserted, based on evidence discovered in Docket No. 40661, that the rape kit and underwear had been "tampered with/destroyed/reconstructed/altered, and/or there was perjured

---

> . . . STR DNA analysis is problematic, however, when forensic scientists are confronted with a mixed DNA sample. For example, blood stains found at a crime scene may be the result of bleeding by both the victim and the perpetrator. An . . . STR DNA profile generated from the stains will have a combination of both individuals' DNA patterns and it is not possible to attribute which traits go with which person. Further, one individual's profile often overwhelms the other and renders it un-detectible. When one individual is male and one is female, however, it is possible to perform a Y-STR DNA analysis and focus solely on the DNA of the male. Thus, the strength of the Y-STR DNA testing derives from the fact that only males have a Y chromosome. Unfortunately, that fact is also the source of the test's weakness.
>      . . . [B]arring random mutations, all men in a paternal lineage will possess the same Y-STR DNA profile. Thus, fathers, sons, brothers, uncles, and paternal cousins cannot be distinguished from one another through a Y-STR DNA profile.
>      For this reason, Y-STR DNA testing has limited usefulness in positively identifying an individual. The testing is extremely useful, however, in excluding someone since an individual cannot be the source of the DNA if the profiles do not match. If the Y-STR DNA profiles do match, then all that can be said is that the individual *cannot be excluded* as the DNA donor.

*State v. Calleia*, 997 A.2d 1051, 1063-64 (N.J. Super. Ct. App. Div. 2010), *overruled on other grounds by State v. Calleia*, 20 A.3d 402 (N.J. Sup. Ct. 2011); *see also Commonwealth v. Linton*, 924 N.E.2d 722, 732 n.8 (Mass. 2010) (noting a testifying DNA analyst "explained that Y-STR testing is often used when there is a large amount of female DNA and possibly only a small amount of male DNA" because "[i]n such instances, [STR] testing may 'drown out' the male contributor's DNA because so much female DNA is present").

testimony/subornation to perjury and falsified document about it" in violation of his constitutional rights. In the alternative, he contends the district court failed to provide him adequate notice prior to denying his motion for appointment of counsel.

If a post-conviction petitioner is unable to pay for the expenses of representation, the trial court may appoint counsel to represent the petitioner in preparing the petition, in the trial court, and on appeal. I.C. § 19-4904. The decision to grant or deny a request for court-appointed counsel lies within the discretion of the district court. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). In determining whether to appoint counsel pursuant to section 19-4904, the district court should determine if the petitioner is able to afford counsel and whether the situation is one in which counsel should be appointed to assist the petitioner. *Id.* In its analysis, the district court should consider that petitions filed by a pro se petitioner may be conclusory and incomplete. *See id.* at 792-93, 102 P.3d at 1111-12. Facts sufficient to state a claim may not be alleged because they do not exist or because the pro se petitioner does not know the essential elements of a claim. *Id.* Some claims are so patently frivolous that they could not be developed into viable claims even with the assistance of counsel. *Newman v. State*, 140 Idaho 491, 493, 95 P.3d 642, 644 (Ct. App. 2004). However, if a petitioner alleges facts that raise the possibility of a valid claim, the district court should appoint counsel in order to give the petitioner an opportunity to work with counsel and properly allege the necessary supporting facts. *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112.

If the trial court concludes that a petition does not demonstrate the possibility of a valid claim that would warrant appointment of counsel, the court must give the petitioner notice of the deficiencies in the petition. *Plant v. State*, 143 Idaho 758, 761, 152 P.3d 629, 632 (Ct. App. 2006). It is essential that the petitioner be given adequate notice of the claimed defects so he has an opportunity to respond and to give the trial court an adequate basis for deciding the need for counsel based upon the merits of the claims. *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112; *Plant*, 143 Idaho at 761, 152 P.3d at 632. If the court decides that the claims in the petition are frivolous, the court should provide sufficient information regarding the basis for its ruling to enable the petitioner to supplement the request with the necessary additional facts, if they exist. *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112; *Plant*, 143 Idaho at 761, 152 P.3d at 632. The petitioner is not entitled to have counsel appointed in order to search the record for possible nonfrivolous claims; however, he should be provided with a meaningful opportunity to

9

supplement the record and to renew his request for court-appointed counsel prior to the dismissal of his petition where he has alleged facts supporting some elements of a valid claim. *Charboneau*, 140 Idaho at 793, 102 P.3d at 1112; *Plant*, 143 Idaho at 761, 152 P.3d at 632.

Nelson's petition alleged tampering with regard to three pieces of evidence, items Q-13 and Q-11 from the rape kit and K.M.'s underwear, which he alleged came to light after the inventory of the evidence, entitled Forensic Biology Report (Report), was prepared in Docket No. 40661. The Report described Q-13 as a "glue-sealed white envelope containing two wooden toothpicks." By contrast, Nelson contends this evidence was described differently on previous occasions: (1) a pretrial inventory of the rape kit by the FBI[2] described Q-13 as a "white envelope labeled 'Step 1 - Special Evidence (if applicable) use swab for dried secretions or genital swabbings'"; (2) an FBI forensic scientist, Frederick Whitehurst, and a nurse testified at trial[3] that Q-13 contained "genital swabbings"; (3) forensic scientist Ann Bradley indicated in a February 2004 inventory that Q-13 contained an "external genital swab";[4] and (4) the report from Sorenson Forensics, which performed the 2012 Y-STR DNA testing, indicated Q-13 was "special evidence . . . dried secretions . . . fingernail . . . a white envelope, gum seal marked M."

Nelson also contends there are discrepancies between the various descriptions of Q-11. The Report described the item as an envelope containing "moist genital swabs" while the Sorenson Forensics notes identify Q-11 as "pubic hair combings," the latter of which Nelson alleges is consistent with Whitehurst's testimony at trial. Finally, Nelson argues there is evidence of tampering with State's Exhibit 6, K.M.'s underwear, because some witnesses at trial did not mention the item had a cutting from the crotch while other inventories did mention a cutting having been removed.

---

[2] For the purposes of this appeal, we accept Nelson's characterization of this inventory, but note that the origin and author(s) of this document is not clear from what is provided to us in the record (which is what was attached to Nelson's post-conviction petition). It is a handwritten document without readily apparent identifiers as to its origin and/or author.

[3] The underlying trial record is not part of the record on appeal, and thus we again accept Nelson's characterization of this testimony for the purposes of his appeal.

[4] Bradley's inventory contained in the record lists various components of the rape kit but does not reference Q-13.

After granting the State's motion for summary dismissal of Docket No. 40661 and reinstating the proceedings in Docket No. 40828, the district court issued a notice of intent to dismiss Docket No. 40828 on the basis that Nelson had already litigated the issue of the alleged tampering with the rape kit in his underlying appeal, had not alleged any new facts to support his allegations of tampering, and the issue regarding K.M.'s underwear could have been raised in his first petition for post-conviction relief. Nelson subsequently requested appointment of counsel to aid in responding to the notice of intent. The district court denied the motion, determining that Nelson was again "attacking the validity of the rape kit offered at trial" with evidence uncovered during Docket No. 40661 and, given the prior proceedings in the case, including the direct appeal, the initial post-conviction petition, and four successive post-conviction petitions, Nelson's petition did not raise the possibility of a valid claim. Additionally, the court stated that Nelson's allegations regarding tampering with the rape kit were merely conclusory statements unsupported by the evidence.

On appeal, Nelson argues he alleges facts that raise the possibility of a valid claim pursuant to section 19-4901(a)(1), which allows for relief where "the conviction . . . was in violation of constitution of the United States or the constitution or laws of this state." He contends that his allegations of tampering could lead to various claims, including: (1) a due process violation under *Napue v. Illinois*, 360 U.S. 264 (1959),[5] based on witnesses testifying falsely at trial regarding evidence in the rape kit; (2) a violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), based on witnesses testifying falsely at trial regarding evidence in the rape kit and the requirement that a prosecutor disclose any material, exculpatory, or impeaching evidence in possession of the law enforcement team; and (3) a claim pursuant to *Arizona v. Youngblood*, 488 U.S. 51 (1988),[6] due to an alleged destruction of evidence in the rape kit.

We affirm the district court's denial of Nelson's motion for appointment of counsel, albeit on an alternate basis. *See Abbott v. State*, 129 Idaho 381, 385, 924 P.2d 1225, 1229 (Ct.

---

[5] "A defendant establishes a *Napue* violation upon showing: (1) the testimony was false; (2) the prosecutor knew or should have known it was false; and (3) the testimony was material." *State v. Wheeler*, 149 Idaho 364, 368, 233 P.3d 1286, 1290 (Ct. App. 2010).

[6] "In *Youngblood*, the Supreme Court determined that, if the content of the lost evidence is unknown, and the item is of only potentially exculpatory value, a due process violation will be established . . . if the defendant shows that the government acted in bad faith [by destroying the evidence]." *State v. Casselman*, 141 Idaho 592, 595, 114 P.3d 150, 153 (Ct. App. 2005).

App. 1996) (holding that if an order of the trial court is incorrect on a particular theory, but is supported by an alternative legal theory, the appellate court may uphold the trial court's decision). In the context of post-conviction relief, the applicant bears the burden not only to prove a constitutional violation, but also to demonstrate that he suffered some resulting prejudice that would entitle him to relief. *Parra v. State*, 129 Idaho 950, 952, 935 P.2d 213, 215 (Ct. App. 1997). Nelson does not, and cannot, make such a showing here. Two of the possible "claims" that Nelson lists above require a showing of prejudice and/or materiality: a *Napue* violation requires that the false testimony be *material*, *State v. Wheeler*, 149 Idaho 364, 368, 233 P.3d 1286, 1290 (Ct. App. 2010), and a *Brady* violation only applies to "material exculpatory evidence," *Dunlap v. State*, 141 Idaho 50, 64, 106 P.3d 376, 390 (2004), and requires a showing of prejudice, which occurs if there is a reasonable probability that, had the withheld evidence been disclosed to the defense, the result of the proceedings would have been different, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). As the State points out, Nelson's convictions were not premised on the evidence he now alleges was tampered with. This is evidenced by, among other things, the fact that this evidence was not subjected to DNA testing until many years after the trial, and thus was not utilized in this manner to implicate Nelson. Our decision on direct appeal indicates that the conviction was primarily based on K.M.'s testimony and identification of Nelson, a neighbor she and her family knew, as the perpetrator. *See Nelson*, 131 Idaho at 219, 953 P.2d at 659 (The victim testified that shortly after Nelson brought her to his trailer he asked her to remove her clothing. When she refused to take off her clothes, he knocked her down onto his bed and began smothering her with a pillow. The victim said that Nelson continued to hold and smother her in this manner until she agreed to remove her clothing.).

Nelson also did not present the possibility of a claim pursuant to *Youngblood* for alleged destruction of certain contents of the rape kit. The government's duty to disclose material exculpatory evidence to the defendant in a criminal case includes the duty to use earnest efforts to preserve evidence for possible use by the defense. *State v. Dopp*, 129 Idaho 597, 606, 930 P.2d 1039, 1048 (Ct. App. 1996). This constitutional obligation to preserve evidence is limited, however, to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed and is of such a nature that the defendant would be unable to obtain comparable evidence by any other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). If the content of the lost evidence is unknown, and the item is therefore of only

potentially exculpatory value, a due process violation will be established only if the defendant shows that the government acted in bad faith. *Youngblood*, 488 U.S. at 57-58. In *Dopp*, this Court rejected an assertion that law enforcement acted in bad faith by destroying a piece of evidence, noting that "the evidence does not support a conclusion that law enforcement staff disposed of the [evidence] in an effort to prevent Dopp from obtaining exculpatory evidence for use at trial." *Dopp*, 129 Idaho at 607, 930 P.2d at 1049. Neither can Nelson make such a showing. Given that the evidence at issue would only be exculpatory to the extent that DNA testing excluded Nelson as the perpetrator, but such DNA testing was apparently not available at the time of trial,[7] it is illogical that the exculpatory nature of the evidence, if it existed at all, would have been apparent to law enforcement such that they could have deliberately disposed of the evidence in an effort to prevent Nelson from utilizing it at *trial* (and thus acting in bad faith). Thus, the district court did not err in determining that Nelson did not allege facts raising the possibility of a valid claim.

Nelson's assertion that the district court failed to give him the requisite notice of the basis for its denial of counsel does not provide him relief because any failure to provide the requisite notice was harmless. An application for post-conviction relief is subject to the Idaho Rules of Civil Procedure. Idaho Criminal Rule 57(b); *Baker v. State*, 142 Idaho 411, 421, 128 P.3d 948, 958 (Ct. App. 2005). Harmless error is defined by I.R.C.P. 61, which provides in relevant part:

> No error . . . or defect in any ruling or order . . . by the court . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Here, even assuming Nelson was entitled to additional notice besides that provided by the district court's notice of intent to dismiss, failure to provide this notice is harmless. Even with additional notice, there were no additional facts that Nelson could have alleged to cure the defect in his claims--namely that the physical evidence he asserted was tampered with was not relied upon by the State at trial to obtain his conviction and the alleged possible exculpatory value of the evidence could not have been apparent to law enforcement prior to trial. In other words, given the nature of the trial, Nelson could not show prejudice requiring post-conviction relief, even if

---

[7]     Nelson stipulated to this fact in Docket No. 40661.

he showed the tampering actually did occur. Put another way, this is not an instance where the allegation of additional facts could cure the defect such that the appointment of counsel could assist Nelson in avoiding summary dismissal of his petition. Accordingly, because he did not allege facts asserting the possibility of a valid claim, we affirm the district court's denial of Nelson's request for appointment of counsel in regard to Docket No. 40828.

## III.

## CONCLUSION

The district court did not err by granting the State's motion for summary dismissal of Nelson's post-conviction petition in Docket No. 40661 because the DNA tests that were conducted did not exculpate him and he did not present admissible evidence supporting his assertion that the initial testing was deficient. Nor did the district court err in denying Nelson's motion for appointment of counsel in Docket No. 40828 because he did not present the possibility of a valid claim. The district court's grant of the State's motions for summary dismissal in both cases is affirmed.

Judge LANSING and Judge MELANSON, **CONCUR.**