## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46371

STATE OF IDAHO,      )
     )
     Plaintiff-Respondent,      )      **Boise, November 2019 Term**
     )
v.      )      **Opinion Filed: February 24, 2020**
     )
DAVID LEE CHRISTENSEN,      )      **Karel A. Lehrman, Clerk**
     )
     Defendant-Appellant,      )
     )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael Reardon, District Judge.

The decision of the district court is <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, Boise, attorney for Appellant. Dennis Benjamin argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Andrew V. Wake argued.

_____

BEVAN, Justice

### I. NATURE OF THE CASE

Dave Lee Christensen was indicted by a grand jury on five counts of lewd conduct with two minors under sixteen. The State notified Christensen of its intent to introduce interviews of the two alleged victims at trial under Idaho Rules of Evidence ("I.R.E.") 803(4) and 803(24). At a pretrial hearing, the district court ruled the interviews were admissible because the victims' statements were made for purposes of medical diagnosis or treatment. The interviews were admitted at trial by stipulation. A jury found Christensen guilty on four of the five counts. Christensen appeals the district court's admission of the interviews. We affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2017, A.M.O. told a peer tutor that Christensen, her step-grandfather, had touched her inappropriately. That same day, A.M.O.'s twin sister, A.G.O., also told school

1

officials she had been inappropriately touched by Christensen. School officials reported the information to the Meridian Police Department and Detective Jeff Miller was assigned to investigate the allegations. After a brief investigation Detective Miller referred A.M.O. and A.G.O. to St. Luke's Children at Risk Evaluation Services ("CARES") to be assessed.

CARES is designed to provide evaluation and treatment of abused or neglected children. A child can be referred to CARES by law enforcement, the Department of Health and Welfare, the court system, or other medical providers. Once a child is referred, the child is assessed in three ways: a forensic interview, a psychosocial assessment, and a medical examination. The forensic interview is performed first by a social worker who is part of the medical team. It is a structured conversation with the child in hopes of maintaining detailed information on something the child has experienced or witnessed. The forensic interview adheres to the National Institute of Child Health and Human Development ("NICHD") guidelines designed to elicit disclosure from children in a non-leading and neutral way. The psychosocial assessment, also performed by a social worker, is completed after the forensic interview. The psychosocial assessment gathers information related to the child's psychological well-being and their social well-being. The last step in the assessment process is the medical examination. The examination is a full head-to-toe medical examination that commonly involves a detailed examination of the genitals and evaluation for possible sexually transmitted diseases or infections. The medical examination is informed by the forensic interview and psychosocial assessment to determine issues the child may have, areas that may need extra focus, any clues about possible physical symptoms and any ideas about possible infections or injuries.

Lara Foster, a medical social worker at CARES, conducted the forensic interview of A.M.O. on June 9, 2017. In that interview A.M.O. disclosed to Foster that she had been inappropriately touched by Christensen. A.G.O. was interviewed by Foster on June 12, 2017. A.G.O. also disclosed that Christensen had inappropriately touched her.

On August 8, 2017, Christensen was indicted on five counts of lewd conduct with a minor under sixteen. The State notified Christensen of its intent to introduce the CARES interviews under I.R.E. 803(4) and 803(24). Christensen objected. At a hearing, the district court held the CARES interviews were admissible under I.R.E. 803(4). The CARES interviews were admitted by stipulation at trial. Both A.M.O. and A.G.O. testified at trial. A jury found

2

Christensen guilty on four of the five counts of lewd conduct with a minor under sixteen. Christensen timely appealed.

### III. ISSUES ON APPEAL

1. Whether the district court abused its discretion by admitting the CARES interviews under I.R.E. 803(4).
2. Whether the district court abused its discretion by admitting the CARES interviews without first redacting statements elicited by A.M.O. and A.G.O. from introductory questions, questions designed to build trust and rapport, and questions designed to test episodic memory.

### IV. STANDARD OF REVIEW

"The trial court has broad discretion in deciding whether to admit hearsay evidence under one of the exceptions, and this Court will not overturn an exercise of that discretion absent a clear showing of abuse." *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015). This Court reviews an alleged abuse of discretion by determining whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "Even if evidence was admitted in error, this Court will not grant relief if we find the error to be harmless." *Stanfield*, 158 Idaho at 331, 347 P.3d at 179.

### V. ANALYSIS

Christensen argues the district court abused its discretion by failing to consider whether A.M.O. and A.G.O. understood that their statements were made for the purpose of medical diagnosis or treatment. Christensen also argues that even if statements by A.M.O. and A.G.O. were admissible under I.R.E. 803(4), the district court abused its discretion by admitting the CARES interviews without first redacting statements elicited from introductory questions, questions designed to build trust and rapport, or questions designed to test episodic memory. For the reasons below, we affirm the district court's admission of the CARES interviews in their entirety.

**A.     The district court did not abuse its discretion by admitting the CARES interviews under I.R.E. 803(4).**

Christensen first argues the district court abused its discretion by admitting the CARES interviews under I.R.E. 803(4). Idaho employs the totality of the circumstances approach when applying hearsay exceptions to children. *State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908

3

(Ct. App. 1996). This approach, when applied to the exception for statements made for the purpose of medical diagnosis or treatment, permits courts to consider several factors that establish a child made a statement which, though hearsay, would be admissible under Rule 803(4). Christensen asserts the district court did not act consistently with applicable legal standards because it failed to consider these factors to determine whether the twins were informed of or otherwise appreciated the importance of speaking truthfully to the CARES interviewer.

"Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted." *Takhsilov v. State*, 161 Idaho 669, 674, 389 P.3d 955, 960 (2016) (internal quotations omitted). "Hearsay evidence is generally inadmissible unless it falls within an exception provided by the rules of evidence or another rule promulgated by this Court." *State v. Hill*, 161 Idaho 444, 448, 387 P.3d 112, 116 (2016). One exception exists for statements made for medical diagnosis or treatment. *See* I.R.E. 803(4). A proponent must show the statement "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; or their source." *Id*. The first step of the analysis thus requires the statements not only be made for the purpose of medical diagnosis or treatment but also requires the statements be reasonably pertinent to that diagnosis or treatment. *See Kay*, 129 Idaho at 518, 927 P.2d at 908 (explaining a declarant must show: "(1) that the statements were 'made for purposes of medical diagnosis or treatment'; (2) that the statements described 'medical history, or past or present symptoms, pain, or sensations, or the source thereof'; and (3) that the statements were 'reasonably pertinent to diagnosis or treatment.'"). "[T]he evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois*, 502 US 346, 355 (1992). Such statements are trustworthy because patients "seeking treatment will not be inclined toward deception and fraud" as that deception or fraud would be against a patient's vital interest. *See Gonzales v. Hodson*, 91 Idaho 330, 332, 420 P.2d 813, 815 (1966).

1. The district court's admission of the CARES interviews under I.R.E. 803(4) was not an abuse of discretion because A.M.O. and A.G.O. made their statements for the purpose of medical diagnosis or treatment.

The district court did not abuse its discretion by admitting the CARES interviews under I.R.E. 803(4) because the totality of the circumstances here establishes the twins' statements

4

were made for the purpose of medical diagnosis or treatment. For guidance in making this determination we turn to the well-reasoned analysis in *Kay*. In *Kay*, the Idaho Court of Appeals addressed the precise issue presented here–whether a child is capable of making statements for the purpose of medical diagnosis or treatment. 129 Idaho at 518, 927 P.2d at 908. There, the district court admitted under IRE 803(4) statements made by a four-year-old victim to two physicians during medical examinations describing what occurred when the victim was molested. *Id*. at 517, 927 P.2d at 907. The defendant argued, like Christensen here, that the prosecution failed to show that the four-year-old appreciated the importance of speaking truthfully to the physicians. *Id*. at 518, 927 P.2d at 908. The court rejected this argument and held that a child, even as young as four, can be motivated to give information for purposes of medical diagnosis or treatment falling within the parameters of I.R.E. 803(4). *Id*. The court recognized a "dilemma arises in attempting to apply to children evidentiary rules which were drafted with adults in mind." *Id*. But, to remediate the dilemma, the court held the district court should consider the totality of circumstances surrounding the statements to determine whether a young child's statements were made for medical diagnosis or treatment. *Id*. In doing so, the court recognized that the district court "may consider any factors which bear upon the likelihood that the child made the statement for [a medical diagnosis or treatment] purpose." *Id*. A non-exclusive list of the guiding factors would include:

> The child's age; whether the child understands the role of the physician in general; whether the child was suffering pain or distress at the time; whether the child's statements were inappropriately influenced by others, as by leading questions from the physician or a previous suggestive interrogation by another adult; whether the examination occurred during the course of a custody battle or other family dispute; the child's ability and willingness to communicate freely with the physician; the child's ability to differentiate between truth and fantasy in the examination itself and in other contexts; whether the examination was initiated by an attorney (which would suggest that its purpose was for litigation rather than treatment); and the timing of the examination in relation to the trial.

*Id*. The court then held so long as there is little reason to doubt the child's motivation, district courts may infer the criteria of I.R.E. 803(4) are satisfied. *Id*.

Applying these *Kay* factors, the Court of Appeals found the medical examinations were not associated with any domestic dispute, there was no motivation for any of the involved adults to try to influence the child's story, the child readily answered questions, the physicians used simple, open-ended, non-leading questions when speaking with the child, both examinations

5

occurred shortly after the misconduct occurred, and both examinations were performed at the hospital where even the young child would realize health was the focus. *Id*. Thus, the court ultimately held the district court's admission of the four-year-old's statements under I.R.E. 803(4) was not an abuse of discretion because the child made the statements for the purpose of seeking medical diagnosis or treatment. *Id*.

In *State v. Nelson*, 131 Idaho 210, 953 P.2d 650 (Ct. App. 1998), the Court of Appeals again held a child's statements made to a medical professional were made for the purpose of medical diagnosis or treatment. 131 Idaho at 216, 953 P.2d at 656. In *Nelson*, the court held that a ten-year-old's statements to an emergency room physician about the events leading to the sexual assault and particulars of the molestation were admissible under I.R.E. 803(4). *Id*. at 215, 953 P.2d at 655. The court explained there was no basis in the record to infer that the child believed she was seeing the doctor for any reason other than diagnosis and treatment. *Id*. Specifically, the court relied on the facts that the child was taken to the emergency room within an hour of the sexual assault, the child had told other adults the defendant had hurt her, and the child complained about pain in sensitive areas. *Id*.

For purposes of this appeal it is important to note that Christensen focuses on whether the victims knew that their statements, made during their interviews and prior to physical examination, were for medical or diagnostic purposes. Christensen avoids the duty to analyze these questions under a totality of the circumstances and myopically focuses on only one of the several *Kay* criteria listed above. In reviewing the totality of the circumstances before the district court we emphasize that the judge "has broad discretion in deciding whether to admit hearsay evidence under one of the exceptions, and this Court will not overturn an exercise of that discretion absent a clear showing of abuse." *Stanfield*, 158 Idaho at 331, 347 P.3d at179.

The record establishes that the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. The district court met all of these factors, and most-importantly for the issue raised on this appeal, it acted consistently with the proper legal standard as required by *Kay* and found little reason to doubt the statements made by A.M.O. and A.G.O. in their respective CARES interviews were made for any reason other than medical treatment or diagnosis.

The district court found that CARES' focus is mainly on medical procedures intended to discover trauma inflicted on children, to address that trauma, and to treat it. This focus was relayed to A.M.O. and A.G.O. when Foster explained it was her job to keep their bodies safe and healthy and that they would see a doctor after the interview was completed. As in *Kay*, the district court also found the statements were elicited by non-leading questions as evidenced by the use of the NICHD protocols. As noted by the court's analysis in *Kay*, the State need not show the child understands the need to speak truthfully to physicians for I.R.E. 803(4) to apply. 129 Idaho at 518, 927 P.2d at 908. "Proof of such an awareness is not required as a matter of foundation when the declarant is an adult, and in our view it is inappropriate to impose a differing foundational rule where the declarant is of tender years." *Id*. Here, the district court found little reason from the record to doubt that the statements made by A.M.O. and A.G.O. fell within the exception for medical diagnosis or treatment. We agree.

Even more, independently applying the factors listed in *Kay* also supports admissibility of the statements made by the twins during their CARES interviews. First, A.M.O. and A.G.O. were thirteen at the time of the interviews, but they were functioning at the level of a third grader.[1] Children of thirteen or six, or even as young as four, are capable of making statements for the purpose of medical diagnosis or treatment. *Nelson*, 131 Idaho at 216, 953 P.2d at 656; *Kay*, 129 Idaho at 518, 927 P.2d 897 at 908. Second, Foster explained the medical purpose of the interviews to A.M.O. and A.G.O., explaining that it was her job to keep them healthy and safe and explained they would be seen by a nurse or doctor after the interview. Even more, both A.M.O. and A.G.O. discussed pain they incurred during the incidents and vaginal bleeding that occurred after. These facts show A.M.O. and A.G.O. knew their statements were for the purpose of medical diagnosis or treatment because the statements themselves show they were aware of the medical staff and why the medical staff was involved. In addition, they freely communicated with the staff about physical pain and discomfort they experienced from the abuse. Third, the statements made by A.M.O. and A.G.O. were not inappropriately influenced by others. The twins had not been interrogated by law enforcement, had minimal investigation from school officials, and Foster used non-leading questions. Fourth, the interviews did not occur during a

---

[1] A.M.O. and A.G.O. were both born with chromosome deletion which affects their learning abilities. At the time of the alleged misconduct, A.M.O. and A.G.O. were thirteen-years-old and in the ninth grade but were functioning at a third grade level.

custody battle or other family dispute. Fifth, A.M.O. and A.G.O. both communicated freely with Foster and acknowledged they understood the difference between truth and falsity. Sixth, the interviews took place before trial.

Finally, and most importantly, even though CARES interviews serve a dual medical and forensic purpose, A.M.O. and A.G.O.'s statements were admissible because their statements remain inherently reliable; they are gleaned from a process designed to aid and inform treatment and diagnosis of the child's *medical condition*. In these circumstances, the child would "still have the requisite motive for providing the type of 'sincere and reliable' information that is important to that [medical] diagnosis and treatment." *Webster v. State*, 827 A.2d 910, 920 (Md. Ct. App. 2003).

Under these circumstances, the questions and their answers were designed to assist in proper medical diagnosis or treatment of A.M.O. and A.G.O.'s medical conditions. Dr. Cox, the medical doctor who testified before the district court about the purpose of CARES interviews, noted that the forensic interview helps undergird the medical examination. The medical doctor observes the forensic interview before performing the medical examination so that he or she can be informed of critical material disclosed during the interview. Dr. Cox testified that after the forensic interview and psychosocial assessments are completed, a full head-to-toe medical examination is performed which is often directed by the information learned from the history collected in those initial interviews. Dr. Cox testified that the forensic interview

> helps in first determining kind of what problems the child may have, what areas [a doctor] need[s] to focus [the] assessment on examination-wise. It give[s] [the doctor] clues about any physical symptoms the child may have had that may be something that needs to be evaluated further like bleeding or pain or discharge or other issues. It gives an idea of risk for infections.

Dr. Cox then testified that disclosures by A.G.O. in her forensic interview directly influenced his examination of her. Additionally, although Dr. Cox did not perform the medical examination on A.M.O., Dr. Cox testified that the assessment and examination process is standardized and that each examiner takes the same approach, using communication from the interview to inform the nature and scope of the medical examination. Thus, the same rationale applies to A.M.O.'s statements.

These factors, taken together, establish that the district court did not abuse its discretion in concluding that A.M.O. and A.G.O. made their statements for the purpose of medical

8

diagnosis or treatment. While there is also a "forensic" component to the interviews, that concern is overcome by the medical characteristic of such interviews. *See State v. Vigil*, 810 N.W.2d 687, 695 (Neb. 2012) ("[A] statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes."); *see also Webster*, 827 A.2d at 921 (collecting several cases that approve the admission of hearsay statements by a sexual assault victim given during a forensic interview due to the dual medical and forensic purposes for the examination).

In addition, the concern regarding the dual purpose of such interviews is allayed in two ways. First, the forensic nature of the interview is not primarily designed to gather evidence, though that is one of its byproducts; it is to help inform the *medical* process that takes place with the child throughout their experience at CARES. The interview assists and enlightens, as Foster testified, as part of the process in helping children keep their bodies safe and healthy, incorporating seeing a doctor after the interview is completed. Second, as explained below, the interviews are "forensic" in nature because they are conducted under detailed guidelines designed, insofar as possible, to obtain untainted information from the child, rather than from the interviewer through leading questions.

Thus, the "forensic" moniker given to these interviews does not supplant the prevailing medical underpinning which supports their admission under Rule 803(4). Stated another way, while there is clearly a dual purpose to CARES interviews, to both gather information and inform medical treatment, the information-gathering purpose does not override the medical necessity of such interviews. As a result, the district court did not abuse its discretion by admitting the CARES interviews under I.R.E. 803(4).

**B.      The district court did not abuse its discretion by admitting the CARES interviews without first redacting statements given by A.M.O. and A.G.O. to introductory questions, questions designed to build trust and rapport, and questions designed to test episodic memory.**

Christensen argues the district court abused its discretion by admitting the CARES interviews in their entirety without first determining whether particular statements were admissible under I.R.E. 803(4). Christensen acknowledged that the CARES interviews adhered to NICHD protocol which has four phases: (1) introductory questions; (2) questions designed to build trust and rapport; (3) questions designed to test episodic memory; and (4) substantive questions designed to illicit disclosure that may aid in medical diagnosis or treatment.

Christensen maintains statements elicited from A.M.O. and A.G.O. during the first three phases of the CARES interviews should have been redacted because those statements were not pertinent to medical diagnosis or treatment.

The State argues Christensen failed to preserve this issue below. But even if the issue were preserved, the State maintains the district court did not abuse its discretion because the statements elicited in the first three phases of the interview were not hearsay and the statements were pertinent to medical diagnosis or treatment. Lastly, the State argues if the district court abused its discretion by admitting the CARES interviews without redaction, the error was harmless because the statements elicited by A.M.O. and A.G.O. were both tested by cross-examination and thus any error in admitting the interviews did not contribute to the jury's verdict.

1.  Whether the CARES interviews should have been redacted below was adequately preserved.

"For an objection to be preserved for appellate review, 'either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context.'" *Hansen v. Roberts*, 154 Idaho 469, 473, 299 P.3d 781, 785 (2013) (quoting *Slack v. Kelleher*, 140 Idaho 916, 921, 104 P.3d 958, 963 (2004)). Below, Christensen made a general objection to the admission of the CARES interviews under I.R.E. 803(4). In response to the State's notice of intent to use the CARES interviews, Christensen argued "any conversation for the purpose of building trust or establishing rapport is not relevant to or for the purpose of medical treatment" and thus should be excluded. Christensen then stated the specific grounds for the objection, I.R.E. 803(4). It was apparent from the context that Christensen was objecting to the admission of parts of the interview intended to build rapport and establish trust between the CARES interviewer and the child. Thus, we hold the issue was adequately preserved.

2.  The district court did not abuse its discretion by admitting the unredacted CARES interviews because the statements were not hearsay, or even if they were, Christensen failed to particularize his objection regarding the offending statements.

The statements elicited by the CARES interviewer during the first three components of the interviews were directed at (1) introductory questions directed at whether the child was competent to testify; (2) questions designed to build rapport and eliciting information about what the child likes to do; and (3) probing episodic memory, where the forensic interviewer identified a recent event and then asked questions designed to elicit details about that event. The questions

10

included what the twins like to do for fun, and whether they understood the importance of telling the truth. While such answers were made out of court, they were not admitted for the "truth of the matter asserted." I.R.E. 801(c). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted*." *Hill*, 161 Idaho at 448, 387 P.3d at 116 (emphasis added). The State had no interest in establishing that A.M.O. likes drawing or swimming. The statements were admitted so that the jury had the full context of the twins' statements about the abuse committed by Christensen and not to establish any disputed facts. Thus, such statements are not hearsay and Christensen's objection on that basis is erroneous. *See State v. Siegel*, 137 Idaho 538, 540–41, 50 P.3d 1033, 1035–36 (Ct. App. 2002) (citing *United States v. Gutierrez–Chavez*, 842 F.2d 77, 81 (5th Cir. 1988) ("[S]tatements offered only to provide context to a defendant's admissions are not hearsay."). Such statements made during a conversation are admissible to provide background and "for the limited purpose of putting the responses of the [child] in context and making them 'intelligible to the jury. . . .' " *Id.* at 541, 50 P.3d at 1036. Thus, such questions help inform the jury as to the nature, circumstances and "feel" of the interview in context. Simply revealing to the jury the victim's statements about what Christensen did to them without more, as Christensen advocates, would make it difficult for the jury to properly weigh that evidence. As a result, we hold the district court did not abuse its discretion by admitting the unredacted CARES interviews.

Christensen also made no attempt to object specifically to those portions of the interviews that he wished to have redacted. Perhaps some statements made in the interviews were irrelevant, or could arguably be hearsay. Even so, without a specific objection to the allegedly inadmissible portions of the interview, we are left only to surmise what might or might not amount to offending statements. A general objection to such interviews, without specifics as to which statements were inadmissible and why, is insufficient to preserve the error for appeal. I.R.E. 103(a)(1)(B). Thus, Christensen's attempt to assail this portion of the interviews on appeal fails.

## VI. CONCLUSION

The district court did not abuse its discretion by admitting the CARES interviews under I.R.E. 803(4). Additionally, admission of the CARES interviews without redaction was not an abuse of discretion. We affirm.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.

11