**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48833**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: November 9, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| WILLIAM NORWOOD PARSONS, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

Judgment of conviction for three counts of lewd conduct with a minor under sixteen and one count of disseminating material harmful to minors, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

HUSKEY, Judge

William Norwood Parsons appeals from his judgment of conviction for three felony counts of lewd conduct with a minor under sixteen, Idaho Code § 18-1508, and one misdemeanor count of disseminating material harmful to minors, I.C. § 18-1515. Parsons contends the district court violated his Sixth Amendment rights under the Confrontation Clause by admitting video recordings of the victim's St. Luke's Children at Risk Evaluation Services (CARES) interviews when the victim did not testify at trial. Parsons also asserts the district court abused its discretion by denying his motion for a continuance and by allowing hearsay testimony from the victim's mother. Finally, Parsons alleges that even if the errors were individually harmless, they amounted to cumulative error. For the reasons set forth below, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

K.B., who was five years old, disclosed to her mother that Parsons had sexually abused her. The same day, K.B.'s mother took her to the emergency room and reported the disclosures to hospital staff and law enforcement. On October 2, 2019, K.B. participated in an interview through CARES; the interview was conducted by a licensed master social worker and forensic interviewer. During the interview, K.B. disclosed multiple acts of sexual abuse Parsons committed against her. Following the interview, K.B. underwent a psychological assessment and a physical examination.

A grand jury indicted Parsons on three counts of lewd conduct with a minor under sixteen and one count of disseminating material harmful to minors. A week after the grand jury indictment was filed, K.B. disclosed additional abuse to her mother, who immediately reported the disclosure to law enforcement. Thereafter, on January 9, 2020, K.B. participated in a second CARES interview.

The State filed a notice of intent to introduce a recording from the first CARES interview at trial. The State argued the video was admissible pursuant to Idaho Rule of Evidence 803(4) as a statement made for medical diagnosis or treatment, as well as I.R.E. 803(24), in the event K.B. had difficulty remembering the incidents at issue or had difficulty while testifying. The State indicated it anticipated K.B. would testify at trial but even if she was unable to testify, the Sixth Amendment's Confrontation Clause did not bar the admission of the video. Parsons filed an objection, arguing that while he did not object to the admission of the CARES video to supplement K.B.'s testimony, admitting the video if K.B. did not testify would violate Parsons' right to confront and cross-examine his accuser.

The parties agreed to submit the issue on the briefing, and the district court issued a memorandum order overruling Parsons' objection, finding that the purpose of the CARES interview was not to establish or prove past events that were potentially relevant to a criminal prosecution, but rather to provide medical care to K.B. Accordingly, the district court concluded that K.B.'s statements made during the course of the CARES interview were non-testimonial and, thus, did not violate Parsons' rights under the Confrontation Clause. The district court also noted that should Parsons have objections to specific portions of the CARES interview or record, he should raise those objections at trial.

On February 25, 2021, the parties were informed that trial would commence on March 8 or March 9. That same day, Parsons' counsel moved to continue the trial to investigate a claim made by Parsons that K.B.'s father was "possibly a convicted juvenile sex offender." In the motion, counsel indicated that Parsons claimed to have disclosed this information early in the case but counsel did not recall learning of the allegation until February 25, 2021. At the hearing on the motion to continue, Parsons' counsel acknowledged that he did not have any evidence in support of the motion and stated, "I don't even know for a fact that there's anything that will come of this." The district court denied the motion, and the case proceeded to trial.

At trial, both the social worker who conducted both CARES interviews and K.B.'s mother testified about K.B.'s disclosures; K.B. did not testify. Both of K.B.'s CARES interviews were admitted without further objection and played for the jury. The jury found Parsons guilty of three counts of lewd conduct with a minor under sixteen and one count of disseminating material harmful to minors. Parsons timely appealed.

## II.

## ANALYSIS

Parsons asserts multiple errors on appeal. First, Parsons contends the district court violated his Sixth Amendment right to confront the witnesses against him by admitting K.B.'s CARES interviews when K.B. did not testify at trial. Second, Parsons asserts the district court abused its discretion when it denied his motion to continue the jury trial. Third, Parsons asserts the district court abused its discretion by allowing hearsay testimony from K.B.'s mother. Fourth, Parsons contends that even if the above errors are individually harmless, they amount to cumulative error. Parsons has failed to show the district court erred.

### A. Admission of the CARES Interviews Did Not Violate the Confrontation Clause

Parsons asserts that K.B.'s CARES interviews were testimonial and, therefore, admitting the videos of the interviews at trial when K.B. did not testify violated his Sixth Amendment right to cross-examine his accuser. The State asserts K.B.'s interview statements were not testimonial in nature and, thus, playing the video for the jury did not implicate the Sixth Amendment's Confrontation Clause.

The Confrontation Clause gives a criminal defendant the right to be confronted with the witnesses against him or her. U.S. CONST. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause bars the admission of testimonial hearsay statements of a

3

witness unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *State v. Stanfield*, 158 Idaho 327, 332, 347 P.3d 175, 180 (2015). The Confrontation Clause "applies to 'witnesses' against the accused--in other words, those who 'bear testimony.'" *Crawford*, 541 U.S. at 51. Thus, "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 576 U.S. 237, 245 (2015). "Testimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51. Some statements fall within the "core class of 'testimonial' statements." Included within that core class are: ex parte in-court testimony or its functional equivalent, extrajudicial statements in formalized testimonial materials, or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52.[1]

For statements that do not fit within a core class of testimonial statements, the United States Supreme Court has adopted the "primary purpose" test to determine whether a statement is testimonial. *Clark*, 576 U.S. at 243-44. Statements are testimonial when the circumstances objectively indicate that the primary purpose of the interview is to establish or prove past events potentially relevant to later criminal prosecution. *Id.* at 244. Pursuant to *Clark*, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony. *Id.* at 245.

Although he did not object to the admission of the second CARES interview at any point prior to or during trial, on appeal, Parsons challenges the admission of both interviews. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992).

The State's notice of intent to introduce the CARES video indicated that the State intended to introduce only the first CARES interview. Similarly, Parsons' pretrial objection to the State's use of the CARES interview referenced only the first CARES interview. At trial, Parsons did not object when the State sought to introduce the second CARES interview:

> STATE:     I'll hand you what's been premarked as State's Exhibit Eight. Do you recognize State's Eight?
> WITNESS: Yes.

---

[1]      As noted in *Clark* and *Crawford*, we recognize that in-court testimony is "testimonial." While the Confrontation Clause may not exclude such testimony because of a prior opportunity to cross-examine, such statements are still "testimonial."

4

STATE: What is that?
WITNESS: This is [K.B.'s] second interview.
STATE: And that's from January 9th of 2020?
WITNESS: Yes.
. . . .
STATE: State moves to admit and publish State's Exhibit Eight.
COURT: Any objection?
DEFENSE: No objection.
COURT: Without objection, then Exhibit Eight will be admitted and may be published at your convenience.

During oral argument before this Court, Parsons acknowledged that he did not object to the admission of the second CARES interview at trial, but Parsons argues the admissibility of the second CARES video was addressed by the district court and, thus, the issue is preserved for appeal. Parsons asserts the district court's order denying Parsons' pretrial objection to the admission of the first CARES interview used the term "interviews" and that the use of the term "interviews" referred to both the first and second CARES interviews. Thus, Parsons argues, the district court implicitly ruled on the admissibility of both CARES interviews and, therefore, there was no need to separately object to the admission of the second CARES interview at trial to preserve the issue for appellate review.

While it is true that if an issue was argued to, or decided by, the district court it can form the basis for review by this Court, *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019), Parsons misconstrues the context of the district court's order because the district court did not address the admissibility of the second CARES interview. The district court's use of the words "interview" and "interviews" explicitly related to the interviews conducted on October 2, 2019, which were the first CARES interview and K.B.'s psychological assessment, both of which were recorded interviews. The district court described the first interview in detail and noted that after K.B.'s interview with the social worker, K.B. underwent a psychological assessment which was also recorded. The court explained: "The interviews were recorded, and Dr. Amy Barton watched the interviews via closed circuit television to gather information to assist in her medical evaluation of K.B." The district court then stated: "On March 17, 2020, the State filed a notice of its intent to introduce the CARES medical records and recorded interviews *from October 2, 2019*, pursuant to Idaho Rules of Evidence 803(4) and 803(24)." (Emphasis added.) The order did not mention the second CARES interview, which took place on January 9, 2020, either by date or by name. Thus, the district court's use of "interviews" was in reference to the video recordings of October 2,

5

2019, which were K.B.'s first CARES interview and subsequent psychological assessment, not the second CARES interview.

Parsons did not argue to the trial court that the second CARES interview should not be admitted and because the issue was not argued to the district court, the court did not rule on the admissibility of the second CARES interview. Instead, the admissibility of the second CARES interview was not raised until trial, when Parsons explicitly stated that he did not object to its admission. As Parsons did not object to the admission of the second CARES interview before trial and explicitly stated that he had no objection to its admission during trial, he has waived consideration of whether the second CARES interview was improperly admitted.

As to the first CARES interview, Parsons argues K.B.'s statements "were testimonial in nature as they were made for the primary purposes of criminal investigation and prosecution." Accordingly, to determine whether the interview is testimonial, we apply the primary purpose test and analyze whether, in light of all the circumstances, viewed objectively, the primary purpose of the first CARES interview was to create an out-of-court substitute for K.B.'s trial testimony. Parsons asserts the Idaho Supreme Court's decision in *State v. Hooper*, 145 Idaho 139, 176 P.3d 911 (2007) controls the outcome of this case. In *Hooper*, the Court held that a child victim's videotaped statements made during the course of an interview with a forensically-trained interviewer at a sexual trauma abuse response center were testimonial under *Crawford* and *Davis v. Washington*, 547 U.S. 813 (2006). *Hooper*, 145 Idaho at 145, 176 P.3d at 917. While the Court recognized that the purpose of such interviews can be for medical treatment and forensic use, after reviewing the circumstances surrounding the interview in *Hooper*, the Court held that "the primary purpose of the interview was to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 145-46, 176 P.3d at 917-18. In other words, the Court determined that the interview was geared toward gathering evidence, rather than providing medical treatment. *Id.* at 145, 176 P.3d at 917. The circumstances the Court considered included that prior to the interview, a detective told Hooper that the type of information obtained during the interview would dictate "what kind of action is done." *Id.* The Court also found it significant that the detective observed the interview, the interviewer consulted with the detective during the interview, the interviewer asked questions "regarding the event in question" and the identity of the perpetrator, the victim was not asked about her medical condition or any injuries, and the interview was conducted "after a medical assessment and separately from the medical assessment." *Id.* at 145-46, 176 P.3d at

6

917-18. The Court concluded: "The parties clearly anticipated that the videotaped statements would provide a substitute for the child's live testimony in court." *Id.* at 146, 176 P.3d at 918.

Parsons argues *Hooper* controls the outcome of this case for several reasons. Specifically, Parsons argues that "just like in *Hooper*": (1) "the examination was arranged by police detectives"; (2) the examination was "conducted by forensically trained personnel"; (3) the detective observed the examination; (4) K.B. "was presented with a series of rules about telling the truth"; (5) "the interviewer consulted with the detective during the interview"; (6) the interviewer did not ask K.B. about any physical injuries; and (7) "there was no evidence presented that the detective observed the medical portion of the exam."[2] We disagree that *Hooper* controls the outcome of this case.

First, as noted in *Hooper*, a "referral by police officers, in and of itself is not of great significance, absent evidence of the purpose of the referral." *Id.* at 145, 176 P.3d at 917. "Similarly, the fact that an interviewer has forensic training does not, in and of itself, make the statements 'testimonial' in nature." *Id.* Thus, neither the police referral nor the forensic training of the interviewer dictate the outcome of this case.

Second, the interview in *Hooper* was not used for medical treatment as the victim did not receive a medical examination following the interview or as part of the interview. Here, the first CARES interview informed with which medical services K.B. would be provided and K.B.'s psychological and medical examination at the CARES facility were done immediately following the first CARES interview and as part of the overall assessment at CARES. These circumstances directly relate to evaluating the primary purpose of the interview. The CARES interview process was described in *State v. Christensen*, 166 Idaho 373, 375, 458 P.3d 951, 953 (2020):

> Once a child is referred [to CARES], the child is assessed in three ways: a forensic interview, a psychosocial assessment, and a medical examination. The forensic interview is performed first by a social worker who is part of the medical team. It is a structured conversation with the child in hopes of maintaining detailed information on something the child has experienced or witnessed. The forensic interview adheres to the National Institute of Child Health and Human Development ("NICHD") guidelines designed to elicit disclosure from children in a non-leading and neutral way. The psychosocial assessment, also performed by a

---

[2] Parsons has also argued that because K.B. had been seen at an emergency room prior to her CARES interview, the interview could not be for purposes of medical treatment or diagnosis. We decline to hold that an initial visit to an emergency room negates any further interviews that may inform or support additional medical examinations or treatment of victims. Indeed, there may be many reasons for subsequent medical examinations or treatment visits that are dependent on the disclosure of additional information.

social worker, is completed after the forensic interview. The psychosocial assessment gathers information related to the child's psychological well-being and their social well-being. The last step in the assessment process is the medical examination. The examination is a full head-to-toe medical examination that commonly involves a detailed examination of the genitals and evaluation for possible sexually transmitted diseases or infections. The medical examination is informed by the forensic interview and psychosocial assessment to determine issues the child may have, areas that may need extra focus, any clues about possible physical symptoms and any ideas about possible infections or injuries.[3]

Additionally, *Hooper* was decided prior to the United States Supreme Court's decision in *Clark* and the Idaho Supreme Court decision in *Christensen*. *Clark* involved statements made by a three-year-old student to a preschool teacher regarding alleged abuse by a guardian. *Clark*, 576 U.S. at 246. Although the Court declined to adopt a "categorical rule" excluding statements to non-law enforcement personnel from the reach of the Confrontation Clause, the Court noted "such statements are much less likely to be testimonial than statements made to law enforcement officers." *Id.* In applying the primary purpose test, the Court noted: "In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 245. The Court explained that there was an ongoing emergency in *Clark*, as the teachers needed to know whether it was safe to release the child to his guardian; the teachers' questions were meant to identify the abuser in order to protect the child from future abuse; and the first objective of the teachers' questioning was to protect the child. *Id.* at 247. The Court also found a child's young age to be significant, stating: "Statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id.* at 247-48. In concluding that the child's statements were not testimonial, the Court explained that it is extremely unlikely that a young child who is the victim of sexual abuse would intend his statements to be a substitute for trial testimony and, instead, "would simply want the abuse to end, would want to protect other victims, or would have no discernible purpose at all." *Id.* at 248.

---

[3] The social worker in this case testified that she was originally trained in National Institute of Child Health and Human Development (NICHD) Interview Guidelines. She further testified that, as part of her advanced interview training, she was also trained in the Utah CJC Program Child Interview Curriculum. The Utah Program was built off the NICHD Guidelines with the consent of the creator of NICHD. The social worker testified that the Utah Program also is conducted in a neutral environment using non-suggestive questioning. That noted, the *Christensen* Court aptly described the CARES interview process consistent with the description of the process provided by the social worker in this case.

When we look at the objective circumstances surrounding K.B.'s statements, the record does not support an argument that K.B.'s statements during the first CARES interview would be used as a substitute for K.B.'s trial testimony. K.B. was five years old when the first interview occurred, and there is no indication that K.B. had any information or understanding about the criminal justice process or that there would even be a trial because the interview preceded any case filing. Moreover, the officer who observed the first CARES interview testified that she did not meet with K.B. prior to the interview and that, to the officer's knowledge, K.B. did not see the officer before going into the interview and was not aware that the officer was observing the interview.

Additionally, the context and nature of the interview was to make sure that K.B. was physically safe and to provide information for a medical examination, as explained in more detail below. K.B. was told prior to the interview that it had a medical purpose and that the social worker worked with "nurses and doctors" and that it was her "job to help make sure that [children's] bodies are safe and healthy." At one point, K.B. told the social worker that she was "the best doctor ever!" Although the social worker corrected K.B., explaining that she was a social worker but that she worked with nurses and doctors, K.B.'s perception of the interviewer and K.B.'s stated belief that the social worker was a doctor reflect K.B.'s understanding of the purpose of the interview, which was not to elicit statements as a substitute for trial testimony. In short, nothing in the record supports a conclusion that K.B.'s statements during the CARES interview would be a substitute for her trial testimony, particularly when trial proceedings had not commenced.

The Idaho Supreme Court has recently held that "while there is clearly a dual purpose to CARES interviews, to both gather information and inform medical treatment, the information-gathering purpose does not override the medical necessity of such interviews." *Christensen*, 166 Idaho at 380, 458 P.3d at 958. The Court explained:

> First, the forensic nature of the interview is not primarily designed to gather evidence, though that is one of its byproducts; it is to help inform the medical process that takes place with the child throughout their experience at CARES. The interview assists and enlightens . . . as part of the process in helping children keep their bodies safe and healthy, incorporating seeing a doctor after the interview is completed. Second . . . the interviews are "forensic" in nature because they are conducted under detailed guidelines designed, insofar as possible, to obtain untainted information from the child, rather than from the interviewer through leading questions.

*Id.*

9

The first CARES interview in this case is almost identical to that in *Christensen*. Like the CARES interview in *Christensen*, the first CARES interview of K.B. was observed by medical providers and was followed by a psychological assessment and a medical examination. Like in *Christensen*, and as previously noted, the social worker explained to K.B. that the social worker worked with nurses and doctors and it was her job to keep K.B.'s body safe and healthy.

Although the CARES interviews in *Christensen* were analyzed pursuant to I.R.E. 803(4) rather than as part of a Confrontation Clause claim, *Christensen* informs our analysis because the "standard rules of hearsay, designed to identify some statements as reliable, [are] relevant" to determining the primary purpose of statements. *Michigan v. Bryant*, 562 U.S. 344, 358-59 (2011). In *Christensen*, the Court determined that the forensic nature of CARES interviews does not supplant their medical purpose. *Christensen*, 166 Idaho at 377-80, 458 P.3d 955-58. The Court adopted the reasoning set forth in *State v. Kay*, 129 Idaho 507, 518, 927 P.2d 897, 908 (Ct. App. 1996) and concluded that statements made by the minor children during a CARES interview were admissible pursuant to I.R.E. 803(4) because "the totality of the circumstances here establishes the twins' statements were made for the purpose of medical diagnosis or treatment." *Christensen*, 166 Idaho at 377, 458 P.3d at 955.

After a lengthy analysis describing the nature of the CARES interview process and analyzing multiple factors, the Court concluded:

> Finally, and most importantly, even though CARES interviews serve a dual medical and forensic purpose, A.M.O. and A.G.O.'s statements were admissible because their statements remain inherently reliable; they are gleaned from a process designed to aid and inform treatment and diagnosis of the child's *medical condition*. In these circumstances, the child would "still have the requisite motive for providing the type of 'sincere and reliable' information that is important to that is important to that [medical] diagnosis and treatment."

*Id*. at 379, 458 P.3d at 957 (internal citation omitted).

The analysis and conclusion of *Christensen* make clear that the Court focused on the nature of the CARES interviews in assessing whether the statements made during those interviews were admissible as statements made for medical diagnosis or treatment. The inherent characteristics of a CARES interview do not change regardless of whether the interview's admissibility is analyzed under a constitutional or an evidentiary rubric. As noted by the Court in *Christensen*, "the forensic nature of the interview is not primarily designed to gather evidence, though that is one of its

10

byproducts; it is to help inform the *medical* process that takes place with the child throughout their experience at CARES." *Id.* at 380, 458 P.3d at 958.

Considering the Idaho Supreme Court's holding and analysis in *Christensen*, that the forensic nature of CARES interviews does not supplant their medical purpose, the United States Supreme Court's guidance in *Clark* that statements by very young children will rarely implicate the Confrontation Clause, and the nature of K.B.'s first CARES interview, we conclude that the primary purpose of the first CARES interview was not to create an out-of-court substitute for trial testimony but rather to inform K.B.'s medical treatment. Accordingly, K.B.'s statements during the first CARES interview were not testimonial and the admission of the first CARES interview did not implicate the Sixth Amendment.

**B.      The District Court Did Not Abuse Its Discretion by Denying the Motion to Continue**

Parsons argues the district court abused its discretion when it denied his request for a continuance because denying the motion hindered his ability to prepare and present a defense. The State asserts the district court acted within its discretion when it denied the motion, as the motion was made less than two weeks before trial and contained no evidence in support of Parsons' assertions.

The decision to grant a motion for a continuance rests within the sound discretion of the trial court. *State v. Ransom*, 124 Idaho 703, 706, 864 P.2d 149, 152 (1993). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). Generally, it has been held that unless an appellant shows that his or her substantial rights have been prejudiced by reason of a denial of his or her motion for a continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995). The bare claim that additional investigation could have been conducted is not sufficient to demonstrate unfair prejudice so as to support a motion for a continuance. *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). Moreover,

> [t]o qualify for a continuance based on late discovery, a party must not only show
> that the late disclosure generally prejudiced the party, but they must also show that

11

a fair trial was denied because there is a reasonable probability that the result of the proceedings would have been different had the additional time been granted.

*State v. Ochoa*, 169 Idaho 903, 916, 505 P.3d 689, 702 (2022).

Parsons' motion to continue was based on an unsupported claim that K.B.'s father was possibly a convicted juvenile sex-offender. Parsons' trial counsel indicated that Parsons may have disclosed this information early in the case but trial counsel did not remember Parsons telling him about it. At the hearing on the motion to continue, trial counsel acknowledged that he did not know if an investigation into the claim would reveal any useful information or even whether the factual premise was true. On appeal, Parsons similarly acknowledges that he cannot say what an investigation may have yielded, if anything, but that "had he been granted the time to investigate, he *may* have been able to provide a different defense to the charges and present the jury with admissible alternate perpetrator evidence." (Emphasis added.) This conclusory assertion is insufficient to show the requisite prejudice. As previously stated, bare claims of prejudice or allegations that additional investigation could have been conducted are insufficient to show prejudice arising from the denial of a motion to continue. *Tapia*, 127 Idaho at 255, 899 P.2d at 965. Moreover, given that K.B. repeatedly identified Parsons as the sole perpetrator, Parsons has not shown a reasonable probability that the result of the proceedings would have been different had additional time been granted to investigate Parsons' claim of an alternate perpetrator. Because Parsons has failed to demonstrate prejudice, we conclude that there was no abuse of discretion.

## C. Any Error in Allowing K.B.'s Mother to Testify About an Out-of-Court Statement by K.B. Was Harmless

Parsons argues the district court erred by allowing inadmissible hearsay testimony from K.B.'s mother. The State asserts the challenged statement was not offered for the proof of the matter asserted and therefore did not constitute hearsay.

Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802.

At trial, K.B.'s mother testified that, on one occasion, she gave K.B. a popsicle and K.B. said, "Mom, look, it looks like a penis. It looks like [Parsons'] penis." Parsons objected on hearsay grounds, and the district court overruled his objection. On appeal, Parsons asserts that the

12

statement was inadmissible hearsay: it was an out-of-court statement made by K.B. for the truth of the matter asserted--that K.B. had seen Parsons' penis and was familiar with what it looked like. The State asserts that the district court did not err in allowing the testimony because the statement was not offered to prove that Parsons' penis looked like a popsicle, but rather to show K.B's familiarity with penises, generally, and Parsons' penis, specifically. The State contends that even if the testimony was inadmissible hearsay, any error in its admission was harmless.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Assuming without deciding the statement was inadmissible hearsay, any error in allowing the testimony was harmless. The only probative value of this evidence was to establish that K.B. had seen Parsons' penis. During her CARES interview, K.B. made numerous statements about Parsons' penis and drew a picture of it, which was admitted as State's Exhibit Seven. That evidence, as well as K.B.'s descriptions of Parsons' sexual abuse she disclosed during the CARES interviews, the testimony from the social worker regarding K.B.'s disclosures of abuse, and the additional testimony from K.B.'s grandmother, shows that the probative force of the statement was minimal. Given the strength of the evidence of Parsons' guilt excluding the challenged testimony,

13

we are convinced beyond a reasonable doubt that the jury's verdict would have remained the same absent the admission of the popsicle testimony.

Parsons also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Parsons has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

## III.

## CONCLUSION

The district court did not err in admitting the CARES interviews and denying the motion for a continuance, and any error in allowing the challenged testimony from K.B.'s mother was harmless. The cumulative error doctrine is inapplicable in this case because Parsons failed to show two or more errors. Accordingly, Parsons' judgment of conviction is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.